# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Sandra Ladik, Penny Perkins,
Jackie Goebel, Marie Coggins,
and Sondra Steeb-Lamb,
individually and on behalf of others
similarly situated,

Court File No. _____

Plaintiffs,

v.

Wal-Mart Stores, Inc.

Defendant.

## CLASS ACTION COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiffs Sandra Ladik, Penny Perkins, Jackie Goebel, Marie Coggins and Sondra Steeb-Lamb (collectively "Plaintiffs"), individually and on behalf of others similarly situated, by their attorneys, bring this action for damages and other legal and equitable relief, stating the following as their claims against Defendant Wal-Mart Stores, Inc. ("Defendant"):

## PRELIMINARY STATEMENT

1.     Over ten years ago, the Dukes v. Wal-Mart class action was commenced as a national class against Wal-Mart Stores, Inc., the largest retailer in the world and the largest private employer in the United States. The action alleged that female employees in Wal-Mart and Sam's Club retail stores were discriminated against based on their

1

gender, with respect to pay and promotion to management track positions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

2. In 2004, the United States District Court for the Northern District of California certified a national class of female employees challenging retail store pay and management promotion policies and practices under Fed. R. Civ. P. 23(b)(2). On June 20, 2011, the United States Supreme Court reversed that class certification order holding that the national class could not be certified based on the facts in the record. The Supreme Court did not preclude prosecution of a class that was consistent with the newly announced guidelines and standards for class actions and Title VII employment discrimination cases.

3. Accordingly, this Complaint, brought by Dukes class members and former plaintiffs, alleges claims on behalf of classes of present and former female Wal-Mart retail store employees who have been subjected to gender discrimination as a result of specific policies and practices in what was known during much of the relevant statutory period as Wal-Mart Region 14 ("Region 14"), which includes Wal-Mart retail stores located in parts of Wisconsin, Illinois, Indiana, and Michigan.

4. As to Region 14, Plaintiffs allege gender discrimination as follows:

   a. Denial of equal pay for all hourly retail store positions;

   b. Denial of equal pay for salaried positions up to and including Co-Manager; and

   c. Denial of equal opportunities for promotion to management track positions up to and including Store Manager.

5. The class membership period begins on December 26, 1998, 300 days prior to the earliest class EEOC charge by a former class member. Based on evidence produced in discovery in the original <u>Dukes v. Wal-Mart</u> class action, interviews with class members and witnesses, and publicly available information, Plaintiffs allege that the challenged practices, and therefore the class period, extends through the present. Upon obtaining new discovery, Plaintiffs will plead more specific time periods for each of the claims.

6. Plaintiffs allege that Defendant maintained a pattern or practice of gender discrimination in compensation and promotion practices, and that its compensation and promotion policies and practices had a disparate impact, not justified by business necessity, on its female employees whose claims arose, and continue to arise, in what was formally known as Region 14.

7. This action seeks an end to Wal-Mart's discriminatory policies and practices in Region 14, make whole relief for the proposed Rule 23 class, and punitive damages.

## JURISDICTION AND VENUE

8. Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et seq.</u> This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343(a)(4).

9. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b) (c) & (d). Named Plaintiffs' claims arose in the Western and Eastern Districts of Wisconsin. Many of the acts complained of occurred in this judicial district

and gave rise to the claims alleged. During certain relevant times, Wal-Mart operated 84 Wal-Mart stores in Region 14.

## PARTIES

10.    Plaintiff Sandra Ladik is a female resident of Montello, Wisconsin. She was employed by Wal-Mart Stores, Inc. in Portage, Wisconsin at Wal-Mart Store No. 1799, Wal-Mart District 20, Region 14, from on or about June 13, 1992 until approximately November 2006.

11.    Plaintiff Penny Perkins is a female resident of Rock County, Wisconsin. She was employed by Wal-Mart Stores, Inc. in Beloit, Wisconsin, at Wal-Mart Store No. 2532, Wal-Mart District 91, Region 14, from approximately October 30, 1998 until approximately April 16, 2010.

12.    Plaintiff Jackie Goebel is a female resident of Kenosha County, Wisconsin. She has been employed by Wal-Mart Stores, Inc., since on or about July 16, 1988 and has worked in Kenosha, Wisconsin, at Wal-Mart Store No. 1167, Wal-Mart District 160, Region 14.

13.    Plaintiff Marie Coggins is a female resident of Rock County, Wisconsin. She was employed by Wal-Mart Stores, Inc. from approximately 1988 until 1997, 1998 until October 2000, and 2007 until 2010. During her tenure with Wal-Mart, she worked at the following locations:   Wal-Mart Store No. 1211 in Harvard, Illinois, Wal-Mart District 160, Region 14; Wal-Mart Store No. 1305 in Janesville, Wisconsin, Wal-Mart District 176, Region 14; and Wal-Mart Store No. 802 in Monroe, Wisconsin, Wal-Mart District 91, Region 14.

4

14.   Plaintiff Sondra Steeb-Lamb is a female resident of Sauk County, Wisconsin. She was employed by Wal-Mart Stores, Inc. from approximately January 2000 until approximately April 2008. She worked at the following locations: Wal-Mart Store No. 1396 in West Baraboo, Wisconsin, Wal-Mart District 20, Region 14; Wal-Mart Store No. 965 in Tomah, Wisconsin, Wal-Mart District 165, Region 8; and Wal-Mart Store No. 3505 in Wisconsin Dells, Wisconsin.

15.   Defendant Wal-Mart Stores, Inc. is a Delaware corporation with stores throughout parts of Wisconsin, Illinois, Indiana and Michigan. Its corporate headquarters is located in Bentonville, Arkansas. Wal-Mart Stores, Inc. operates retail stores doing business as Wal-Mart Discount Stores, Wal-Mart Supercenters, and Wal-Mart Neighborhood Markets (collectively "Wal-Mart") in the relevant parts of Wisconsin, Illinois, Indiana and Michigan.

## ALLEGATIONS OF NAMED PLAINTIFFS

16.   Each of the Named Plaintiffs states and alleges:

a.   Plaintiff Sandra Ladik ("Ladik") was employed at the Portage, Wisconsin Wal-Mart store from June 1992 to November 2006. She worked at the Snack Bar, as a stocker in receiving, and as one of the few women in the role of Department Manager in the maintenance department. In 2001 or 2002, she became aware that a male employee whom she trained to become a maintenance supervisor, made a significantly higher wage than her. She had more experience and responsibility than he did, as she was the district trainer for maintenance supervisors, and he was a maintenance supervisor.

5

Later, while traveling to other stores to train department heads and talking with the men she was training, she learned that many others were making more money than her.  Many men she was training started at her same wage, whereas she had been at the company for more than a decade.

b.  Plaintiff Penny Perkins ("Perkins") worked in the Beloit, Wisconsin Wal-Mart store from October 1998 to April 2000.  During this time she held positions as a floor associate in the produce and dairy department and Department Manager in the floral, cosmetics and candy departments. Perkins was forced to maintain dual Department Manager roles to maintain her full-time hours.  Perkins received only one merit raise the entire time she worked for Wal-Mart, and that raise was only after a female Department Manager lobbied for her.  Perkins knew of a male associate who had less experience than her who received six merit raises during the same time period.  She also became aware that men received higher percentage annual raises.  Perkins never received more than the average raise percentage during her annual reviews, despite her consistently positive performance.  After almost 12 years of working for Wal-Mart, she had not yet reached her pay cap when she finally left her employment.  In addition, when Perkins was a Department Manager she was involved in completing an annual evaluation for a female associate.  Perkins recommended the female associate receive the highest percentage raise, based on her excellent performance.  The male Personnel Manager told her that she would need to

lower her evaluation because "no one gets the highest raise."   However, Perkins knew that men often received raises at that high percentage.

c. Plaintiff Jackie Goebel ("Goebel") has come to know and understand that men are paid more than women for the same work at Wal-Mart.  This has become common knowledge in and around her store, and is discussed often among co-workers.   After 21 years in the claims department, Goebel transferred to the grocery claims department, which is a pay grade 6.  At that same time, Goebel became aware of a man who made only a penny less than her, and was a pay grade 2.  Goebel learned of this pay issue because the man showed her his pay stub.  Goebel has not received a raise in six years.

d. Plaintiff Marie Coggins ("Coggins") worked for Wal-Mart stores from 1988 to 1990 as a part-time cashier and as a Department Manager for paper goods and beauty aids in Harvard, Illinois; from 1990 to 1996 in a sales floor position in Janesville, Wisconsin; and from 1996 to 1997 and 1998 to 2000 as an associate in the jewelry department in Monroe, Wisconsin, before returning to Wal-Mart from 2007 to 2010 as a cashier associate at the service desk in Janesville, Wisconsin.   Throughout this time, Coggins became aware that men were paid more for the same work.   When she returned to work at the Janesville store, she was hired as a cashier even though she was qualified by prior experience and otherwise to serve as a Department Manager.  She overheard men admitting to other people that

7

they were making more money than their female counterparts. After being re-hired, Coggins began expressing her interest in salaried management positions in 2009. Coggins completed all the required assessment tests and repeatedly expressed her interest in the Support Manager position as a way to work her way up to the MIT Program. Despite her many years of experience and exemplary performance, she was not even considered for an interview. The position was given to a man from another store with less experience. Coggins finally quit in 2010 after she was belittled by management when she inquired about why she was passed over for the Support Manager position.

e. Plaintiff Sondra Steeb-Lamb ("Steeb-Lamb") and her husband began working in the same position, in similar departments, at the same time in the West Baraboo Wal-Mart store, in or about 2000. Despite being comparable in every way, Steeb-Lamb was paid less than her husband. She was paid $12.00 - $15.00 an hour while her husband was paid $15.00 - $17.00 an hour. Once she was allowed into the Management in Training Program (MIT), Steeb-Lamb was trained to be an Assistant Manager with responsibility over what was called Division 1 departments, soft and hard-lines. However, when it came time for her placement into a managerial position, she was assigned to the bakery department in the Wisconsin Dells location. This was the worst assignment in the area, because the department was poorly run and had very little profit. This assignment

8

effectively prevented her from moving up in management. Steeb-Lamb was one of the few female Assistant Managers. She received many "coachings" from her Store Manager, many of which were for insignificant issues. Nonetheless, these coachings prevented her from being promoted. Eventually, she was forced to either step down from the Assistant Manager position or lose her job. During her year in management-in-training, Wal-Mart management terminated three female assistant managers besides Steeb-Lamb. This combined with her harsh treatment for insignificant disciplinary reasons persuaded Steeb-Lamb that she should return to work as an hourly associate, which she did at the Baraboo location in June 2006.

## ORGANIZATIONAL AND STORE STRUCTURE WITHIN REGION 14

17.   *Store Formats* – Within Region 14, Wal-Mart has operated in three primary formats: Wal-Mart Discount Stores, Wal-Mart Supercenters, and Wal-Mart Neighborhood Markets.

18.   *Common Hourly Jobs Within Stores* – All stores within Region 14 have used common job titles and job descriptions, and the same job hierarchies.

19.   *Most Common Positions* – While there are numerous job titles at Wal-Mart, the majority of hourly employees have worked as sales associates, cashiers, stockers, and department managers. The most common salaried management position is an assistant manager.

20.   *Common Department Structure* – Stores within Region 14 have been divided into numerous departments, which have been staffed by hourly paid employees.

9

Some departments have been designated as specialty departments. The departmental structure is the same throughout the stores in Region 14.

21.  *Common Management Jobs* – With the exception of the Support Manager position, management positions within Region 14 are salaried. Each store has multiple Assistant Managers. Larger stores have one or more Co-Managers who supervise Assistant Managers and other staff. All stores have a Store Manager who is in charge of the store. Specialty department managers, who report to Store Managers, also report to District and Regional Specialty Managers above the store level.

22.  *District Organization* – Until 2006, stores within Region 14 were grouped into districts that were supervised by District Managers. The districts typically included six to eight stores. Thereafter, districts have been expanded to include more stores.

23.  *District Managers' Role* – District Managers within Region 14 have been responsible for ensuring store compliance with company policies and culture. District Managers have been based in their districts and spend their time visiting and monitoring the stores in their markets and reviewing all facets of the store operations. District Managers also have made or approved compensation and promotion decisions for the stores.

24.  *Regional Organization* – Districts are grouped into Regions, headed by a Regional Vice President. As of 2003, Region 14 contained approximately 84 stores, made up of approximately 14 districts.

25.  *Role of Regional Vice President* – Regional Vice Presidents monitor and implement corporate and regional policies regarding compensation and promotion, and

10

provide final approval regarding pay and promotion decisions. Regional Vice Presidents regularly meet with District Managers and receive weekly reports regarding the activities within the stores they supervise.

26.   *Regional Personnel Managers' Role* – Region 14 has a Regional Personnel Manager, who assists the Regional Vice President and District Managers in making pay and promotion decisions for employees working in Region 14 stores.

27.   *Divisional Organization* – The Regional Vice President reports to a Divisional Senior Vice President.

28.   *Changes to Region 14 and Districts* – Since 2003, Wal-Mart has modified the construction of these regions and districts. In approximately 2006, Wal-Mart changed the terminology used to describe the areas within its regions. Districts were expanded to include 12 to 20 stores and became known as Markets. District Managers became known as Market Managers, and while the number of stores they were responsible for rose, their general role and duties remained the same.

## CLASS ALLEGATIONS

29.   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of: a) all women who are currently employed or will be employed by any Wal-Mart retail store in Region 14; and b) all women employed at any Wal-Mart retail store in Region 14 at any time from December 26, 1998 to the present, and who have been or may be subject to the following practices and policies:

    a.   Denial of equal pay for all hourly retail store positions;

b. Denial of equal pay for salaried positions up to and including Co-Manager; and

c. Denial of equal opportunities for promotion to management track positions up to and including Store Manager.

The proposed class does not include Store Managers or licensed Pharmacists.

30. Plaintiffs are members of the proposed class they seek to represent.

31. The members of the proposed class are sufficiently numerous that joinder of all members is impracticable.

32. There are questions of law and fact common to the proposed class and these questions predominate over individual questions. Such questions include, without limitation, the following: (1) whether Defendant, through its Region 14 managers with final authority to make the challenged decisions, has engaged in a pattern or practice of discrimination in pay and management track promotions against its female employees in Region 14; (2) whether Defendant, through its nationwide policies, including but not limited to, the Relocation Policy, Career Preferences Program, Pay Cap Policy, and Scheduling and Attendance Policies, as implemented and utilized by Region 14 management, has engaged in a pattern or practice of discrimination in pay and management track promotions against its female employees in Region 14; (3) whether Defendant's nationwide policies, including but not limited to the Relocation Policy, Career Preference Policy, Pay Cap Policy, and Scheduling and Attendance Policies, as implemented and utilized by Region 14 management have had an adverse impact on the proposed class and if so whether this impact can be justified by business necessity; (4)

whether there are statistical patterns adverse to female employees in pay and management track promotions in Region 14; (5) whether Defendant was aware of the impact of their nationwide policies and practices on its women employees; and (6) whether injunctive relief and punitive damage relief for the proposed class are warranted.

33.    The claims alleged by Plaintiffs are typical of the claims of the proposed class.  Each Plaintiff has worked in Wal-Mart's Region 14 and has been subjected to some or all of the discriminatory policies and practices.

34.    The Named Plaintiffs will fairly and adequately represent and protect the interests of the proposed class.

35.    This case on behalf of all women who are currently employed or will be employed at any Wal-Mart retail store in Region 14 as described in Paragraph 29 of this Complaint is appropriate, and thus this sub-class is properly maintainable under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to such class or classes, thereby making appropriate final injunctive relief or corresponding declarative relief with respect to such class or classes as a whole.

36.    Class-wide monetary relief for all females who have been employed at any Region 14 Wal-Mart at any time since December 26, 1998, as described in Paragraph 29 of this Complaint, is properly certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to such class or classes predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

37.    Alternatively, class-wide liability and punitive damages liability under the theories advanced in this action are properly certified under Federal Rule of Civil Procedure 23(c)(4) for the proposed class because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

## COMPENSATION DISCRIMINATION WITHIN REGION 14

38.    *Common Compensation Policies* – Compensation of store-based employees has been set based upon a common set of guidelines applied consistently throughout Region 14, which establishes basic standards for setting pay rates at hire and subsequent pay adjustments of hourly and salaried employees, hereby referred to as Pay Guidelines.

39.    *Hourly Job Categories* – All hourly positions have been grouped into various job categories, which have been uniform across the various stores in Region 14. All employees with the same job title, such as sales associates, are placed in the same job category regardless of the department they work in.

40.    *Job Category Pay Rates* – The minimum pay levels at hire ("start rates") for each job category have been established for each store in Region 14 by the Regional leadership team.  Thereafter, an employee's pay level may be adjusted: 1) after an initial probationary period, 2) if the employee is promoted to a higher job class or into management, 3) on an annual basis if the employee satisfies minimum performance standards, or 4) if the employee has been awarded a special "merit" raise.

41.    *Process for Setting Hourly Pay* – The Store Manager has the initial responsibility to set pay rates for individual hourly employees within the pay guidelines,

14

subject to a number of constraints set by the Region 14 Market and Regional Managers. Where a Store Manager has set a pay rate above or below the guidelines, the rate is called an "exception".

42.   *Hourly Pay Exceptions* – The pay rate for a new employee may be set up to a maximum of $2 per hour above the start rate, but if the new employee's rate is more than 6% above the established start rate for that pay class, a computer program in the payroll system prohibits payment at this rate unless and until the Store Manager manually enters the pay rate for that employee.  A significant proportion of employees have been paid 6% or more above the start rate in virtually every Wal-Mart store in Region 14.

43.   *Approval of Exceptions* – All hourly pay exceptions have been automatically reported to the Market Manager who may approve or disapprove such exceptions.  Regional Personnel Managers have also been informed of all hourly pay exceptions and required to ensure that hourly compensation is consistent among employees in Region 14.

44.   *Hourly Pay Reports and Audits* – Market Managers, Regional Personnel Managers and Regional Vice Presidents regularly receive reports of all employees whose hourly pay in a job category is more than 10% below or 5% above the average pay in that class.   Market Managers perform quarterly audits of each store's compliance with company policies, including compensation policies, which are reported to Regional Personnel Managers and Regional Vice Presidents.

45.     Region 14 Market Managers and Regional Vice Presidents have the ultimate authority whether, and by how much, to adjust the pay of all hourly employees, including those who are listed on exception reports.

46.     *Salaried Pay Guidelines* – Within Region 14, salaried employee compensation is required to be made in accordance with pay guidelines for each salaried position. These guidelines set ranges for each position.

47.     *Assistant Manager Salary* – Region 14 Market Managers, with the concurrence of the Regional Vice Presidents and Regional Personnel Managers, set the compensation for Assistant Managers within Region 14 stores.

48.     *Co-Manager Compensation* – Within Region 14, Co-Manager compensation is comprised of a base salary and profit sharing tied to the profitability of the Co-Manager's store. Regional Vice Presidents determine base salary and assign the stores at which Co-Managers work, the profitability of which affects the profit-sharing component of the compensation they receive.

49.     *Pay Decisions Not Job Related Or Documented* – On information and belief, Regional Management failed to ensure that Store Managers within Region 14 and its included Markets relied solely on job related criteria such as job performance or experience when setting, adjusting, or approving compensation for individual employees. Region 14 Store Managers do not document the reason for setting, adjusting or approving the compensation of individual employees. The Regional Vice Presidents and Market Managers do not hold the Store Managers in Region 14 accountable for the factors they use in making pay decisions or in ensuring those factors comport with the law. Nor do

16

they require any documentation of the reasons for the compensation paid to individual employees or specify the weight that should be accorded any requirement for setting or adjusting compensation.

50.    *Patterns in Compensation* – Women who hold salaried and hourly positions in Region 14 have regularly been paid less, on average, than similarly-situated men, although on average the women have more seniority and higher performance ratings than the men. This gender-based pay difference is adverse to women and exists in each of the Districts, and in the vast majority of the stores, in Region 14, even when nondiscriminatory objective factors, such as seniority, performance, store location, and other factors are taken into account.

51.    *Management Knowledge of Compensation Discrimination* – Personnel Managers, Regional Vice Presidents, and Market Managers received regular reports regarding compensation for hourly and salaried employees within Region 14, showing that on average, female employees were paid less than men.

52.    *Adverse Impact of Compensation System* – Wal-Mart's compensation policies, including its failure to mandate managers to base pay decisions for individual employees on job related criteria, such as experience or documented performance, have had an adverse impact upon its female employees in Region 14. Because reasons for compensation decisions are not documented, elements of Wal-Mart's compensation decision-making are not capable of separation for analysis.

## PROMOTION DISCRIMINATION WITHIN REGION 14

53. *Management Track Positions* – Within Region 14, Support Managers are the highest level hourly supervisory positions and assume the duties of Assistant Managers in their absence. Employees were often selected for these positions arbitrarily by virtue of what is often referred to as a "tap on the shoulder" promotional system. Employees in these positions are often groomed for further advancement. Prior to 2004, there was no system for posting positions for the Management in Training program. No formal application process for selection for these positions or job related criteria for making selections for those to be promoted existed. Thereafter, and specifically after 2006, Wal-Mart adopted a formalized application process for certain positions called Career Preferences, with the ostensible purpose of making the hiring and advancement process more fair. Nonetheless, for the reasons more specifically set out herein, Career Preferences maintains many of the discriminatory practices preceding its existence.

54. *Career Preferences Program* – On information and belief, the Career Preferences Program has and continues to be being manipulated by management in a discriminatory fashion:

a. Despite meeting the eligibility requirements for promotion and expressing interest through the Career Preferences System, several female employees complained of never being contacted or selected for an interview.

b. For example, proposed class member Margie Bracken never heard about promotion opportunities until after male employees received the promotions, and positions were often not posted in her store.

18

c.  Multiple female employees complained of unwarranted coaching and progressive discipline after showing interest in a promotion through the Career Preferences System and/or inquiring into the possibility of a promotion. Such coachings served to provide a pretext for disqualifying these women from the promotions they sought.

d.  For example, when new management positions were posted, proposed class member Tammy Nichols was frequently coached for minor issues. These "coachings" disqualified Ms. Nichols from applying for a promotion for six months. Ms. Nichols was interested in pursuing the Management in Training program but never got the opportunity to despite her years of service and experience at Wal-Mart.

55.  *Promotion to Management Trainee* – Entry into the Management Trainee Program was, and is a requirement for advancement into Assistant Manager and other salaried management positions. After twelve to sixteen weeks of training, those that are successful in the Management Trainee Program are promoted to Assistant Managers. Although employees may have had the opportunity since 2004 to indicate their personal interest in management trainee positions by including it as a career goal within Career Preferences, on information and belief, there were no actual job postings for these positions prior to 2006. Hourly employees in Region 14 were not provided any information regarding how to enter management, what the requirements or qualifications were for entering management, or how to apply for the Management Trainee Program. In effect, this promotional system amounted to hand selection or a "tap on the shoulder"

system of promotion.   Career Preferences, adopted and implemented thereafter, was ostensibly designed to address the lack of work-related criteria for promotion, but effectively continued the "tap on the shoulder" system by allowing management to instruct people to apply when openings arose, and allowed the same management to make the ultimate selection, without regard to objective criteria.

56.   *Criteria for Promotion to Management Trainee* – Market Managers, assisted by Regional Personnel Managers, select management trainees. Within Region 14, these managers have been provided uniform guidelines setting minimal eligibility criteria for promotion into the Management Trainee Program, including minimum tenure, age (18 years or older), absence of current "active" discipline, satisfactory recent performance evaluations and willingness to relocate, but the guidelines, while establishing minimum criteria, still grant managers the ability to make subjective judgments. Employees selected into the Management Trainee Program are required to transfer from their stores as they enter training, and later, Assistant Manager positions, subject to very limited exceptions which must be approved by the Regional Personnel Manager and Regional Vice President. These criteria have had the purpose and effect of disadvantaging women, as women have had a disparate number of disciplinary notices related to tardiness and absenteeism, specifically because of family obligations, and also because of the fact and the perception that women would not or could not relocate.

57.   *Management Trainee Registration of Interest* – In January 2003, Wal-Mart instituted an one-time, online application process for entry into the Management Training Program. In order to be considered as an applicant, employees were required to agree to a

set of conditions, many of which had the purpose and effect of discouraging women from seeking such positions. Potential applicants were required to accept the conditions that, as Assistant Managers, they would travel for up to six weeks in duration, be subject to a varied and irregular schedule, including working on scheduled days off, working during days, overnights, weekends and holidays, scheduled days off not consecutive and rotated weekly, and scheduled hours changed or increased without notice. None of these requirements are justified by business necessity, and it is untrue that Assistant Managers must normally travel up to six weeks. Failure to accept all of these conditions precluded consideration as an applicant, which has resulted in the exclusion of interested and qualified women from the Management Training Program.

58. *Promotion to Co-Manager* – Within Region 14, Regional Vice Presidents select Co-Managers subject to approval by the Divisional Senior Vice President. The majority of Co-Manager promotions are transfers across district lines. While there have been minimal eligibility requirements for promotion to Co-Manager such as satisfactory performance and willingness to relocate, there are no job related criteria for making selections among those who meet the minimum criteria, or in determining which store to assign to a Co-Manager.

59. *Promotion Policies and Practices* – In Region 14, and its Districts included therein, management track promotional policies and practices have denied interested and qualified females equal access to promotional opportunities because promotion opportunities were not posted, there was no open application system, and employees were not informed of the criteria required for a promotion. Moreover, Managers in Region 14

21

do not require, or use, valid job related factors in making promotion selections, nor does Wal-Mart specify the weight that should be accorded any requirements for promotion. As a consequence, qualified women were denied equal access to promotions because of their gender.

60.   *No Documentation of Promotion Decisions* – Managers have not documented, and Wal-Mart has not tracked, the reason for selecting a particular employee for a management promotion. Managers have not documented, and Wal-Mart has not tracked, which employees have been denied consideration for promotion because of their inability to comply with relocation, travel or scheduling requirements for promotion.

61.   *External Statistics* – Wal-Mart has had a significantly lower percentage of female managers in Region 14 compared to its largest competitors.

62.   *Internal Statistics on Promotion Rates* – Female employees in Region 14, including districts in which each Named Plaintiff worked, have been much less likely than their male counterparts to receive promotion to management track positions including Support Manager, Management Trainee and Assistant Manager, and Co-Manager positions, despite the fact that they possess equal or better qualifications than their male counterparts.

63.   *Internal Statistics on Time to Promotion* – Females employed in Region 14 must wait significantly longer to be promoted into management track positions than men with equal or lesser qualifications. This is true in each of Region 14 Districts, including the Districts in which each Named Plaintiff worked.

22

64.   *Management Knowledge of Promotion Discrimination* – Wal-Mart management has been aware of gender disparities in promotions in Region 14 and has failed to take any remedial action.

65.   *Reporting by Gender* – Every store and district, in Region 14, regularly compiles and reports to corporate headquarters the gender composition of its hourly and managerial workforce, employee turnover, exceptions to promotion policies, job posting data, entry into management training programs and other data.   Market Managers, Regional Personnel Managers and Regional Vice Presidents for Region 14 receive these reports.

66.   *People Division Reports* – Wal-Mart's People Division regularly prepares reports for senior management summarizing promotion and incumbency rates for store management positions by gender, and reports are regularly made to the Board of Directors.

67.   *Store Visits* – Market Managers, Regional Personnel Managers and Regional Vice Presidents in the Region 14 regularly visit stores and are aware of the gender composition of the workforce.

68.   *Warnings About Discrimination* – Senior management officials, senior People Division officials, and outside consultants have warned Wal-Mart that women are not sufficiently represented in management positions, women are paid less than male employees in the same jobs, and that Wal-Mart lags behind its competitors in the promotion of women to management positions.

69.   *Discriminatory Practices Identified* – These officials and consultants have also identified policies and practices at Wal-Mart that have an adverse impact on its female employees, including lack of consistent job posting, the requirement of relocation as a condition of entry into and promotion through management, exclusion from consideration because of disciplinary coachings without respect to the underlying reason or cause for the coachings, reliance on stereotypes in making pay and promotion decisions, lack of objective criteria for making promotion decisions, and lack of consistent and reliable scheduling for management level employees.

70.   *Relocation Unnecessary* – Wal-Mart's founder, Sam Walton, conceded in 1992 that Wal-Mart's policies, particularly its relocation requirement, create unnecessary barriers to female advancement, yet this policy remained in place for years thereafter.

71.   *Changes Blocked* – Senior managers also blocked policy changes that would have reduced the impact of Wal-Mart's discriminatory policies including posting of managerial vacancies.

72.   *Failure to Analyze* – Wal-Mart never studied nor analyzed whether any of its practices were consistent with business necessity or whether less discriminatory alternatives could be adopted.

73.   *Adverse Impact of Promotion Policies* – Wal-Mart's promotion policies, including its failure to require managers to base promotion decisions for individual employees on job related criteria, and the disparate enforcement of disciplinary and relocation policies, among others, have had a statistically significant adverse impact upon its female employees in the Region 14.  Because reasons for promotion decisions are not

24

documented, and Wal-Mart does not create or maintain records which identify the impact of separate components of its promotion policies and practices, its promotion decision-making process is not capable of separation for analysis.

## WAL-MART MANAGERS RELY ON DISCRIMINATORY STEREOTYPES

74.     In the absence of job-related compensation and promotion criteria, Wal-Mart's managers rely on discriminatory stereotypes and biased views about women in making pay and promotion decisions in Region 14.

75.     A 1998 survey of Wal-Mart managers revealed that there was a "good ol boy philosophy" at Wal-Mart, that many managers were "closed minded" about diversity in the workplace, and that District managers "don't seem personally comfortable with women in leadership roles."

76.     A committee of Wal-Mart's few female executives reported that "stereotypes limit the opportunities offered to women."

77.     On January 24, 2004, at a meeting of all Wal-Mart's District Managers presided over by Wal-Mart Stores' CEO Thomas Coughlin, the District Managers were told that they were the key to running the stores: "[y]ou are the culture." The key to success was described as "single focus to get the job done . . . women tend to be better at information processing. Men are better at focus single objective [sic]." The District Managers were instructed to create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders."

78.     All Wal-Mart Store Managers, including Store Managers from Region 14, have been required to attend training programs at the company's Walton Institute. These

managers were advised at the Institute that the reason there are few senior female managers at Wal-Mart is because men were "more aggressive in achieving those levels of responsibility" than women.  Managers were cautioned that efforts to promote women could lead to the selection of less qualified women over more qualified men.

79.   On information and belief, Wal-Mart management continues to rely on discriminatory stereotypes and biased views about women when making pay and promotion decisions in Region 14.  Among the many examples of such discriminatory behavior are the following:

a. Despite a long employment history at Wal-Mart and successful completion of the tests, proposed class member Miriam Briggs-Muhammed was told by the Personnel Manager she was "not management material" and was rejected for the MIT Program.  Notably, Ms. Briggs-Muhammed had worked for Wal-Mart on and off from approximately 1975 until about 2008.

b. When she inquired about why male Assistant Managers were not required to work extended hours like female Assistant Managers, proposed class member Carol Frendling was told by management that male Assistant Managers "ha[d] families to go home to."

c. Proposed class member Kathleen Cole's manager explained that the reason for the disparity between her pay and her male counterpart's pay was due to Wal-Mart's "philosophy" that men were paid more because they were heads of the household and they had families to support.

26

    d. Proposed class member Deloreh Mims said that male managers made derogatory comments to her such as, "if you were a man, you would know."

## WAL-MART'S INEFFECTIVE ANTI-DISCRIMINATION EFFORTS

80. Prior to filing of this action, Wal-Mart had no meaningful policies or practices to hold managers accountable, financially or otherwise, to equal employment and diversity policies and goals.

81. Starting in 2000, Wal-Mart asked District Managers to set diversity "goals" for advancement of women in management. The goals were based on each manager's individual views on what was attainable and were not tied to any objective measures of availability or qualifications. Prior to 2004, failure to meet diversity goals had no financial or other consequence for managers.

82. As late as 2003, Wal-Mart Stores' CEO Coughlin was not aware of any diversity goals or whether managers had met such goals. Many Store Managers were also unaware of the existence of any diversity goals.

83. Until at least 2003, there had never been any diversity goals set for individual stores, or for any compensation practices.

## FIRST CLAIM FOR RELIEF (VIOLATION OF TITLE VII)

84. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

85. This claim is brought on behalf of all Named Plaintiffs and the proposed class they seek to represent.

86. In June 2004, the United States District Court for the Northern District of California certified this case as a national class action, a decision that was largely upheld

27

by the Ninth Circuit Court of Appeals en banc. On June 20, 2011, the Supreme Court reversed the Ninth Circuit decision. During the pendency of the former certified class, time periods for filing EEOC charges and subsequent litigation for all former class members were tolled. On August 19, 2011 the United States District Court for the Northern District of California, to which the Dukes v. Wal-Mart case had been returned by the Supreme Court, issued an order establishing common dates for all members of the former class certified in the Dukes v. Wal-Mart for when the limitations period for their claims would resume running. The District Court ruled the claims would be tolled as follows: 1) former class member who had received a right to sue letter from the EEOC for claims of sex discrimination in pay promotion must file suit by October 28, 2011; 2) those in states without a state fair employment agency worksharing agreement who would normally have 180 days to file charges must file by January 27, 2012; and 3) those in states with a worksharing agreement who would normally have 300 days to file charges, must file a charge by May 25, 2012. Each of the above-named Plaintiffs have complied fully with these requirements.

87.    The foregoing conduct violated Title VII of the Civil Rights Act of 1964. Wal-Mart has engaged in a pattern or practice of discriminating against its female employees in making compensation and management track promotion decisions in Region 14.

88.    Wal-Mart has maintained a system for making decisions about compensation and promotions that has had an adverse impact on its female employees in Region 14. Its compensation policies for setting and adjusting pay collectively and

individually, including its failure to require or use job related criteria for making compensation decisions, have had an adverse impact on women. Its management track promotion policies and pay policies, including but not limited to, the absence of an open application process and job posting, its application of attendance disciplinary policies, its relocation, travel and availability requirements for management positions, its scheduling requirements which deny managers a consistent schedule, and its failure to apply job-related objective criteria for making management selections, have all individually and collectively caused this adverse impact on female employees in promotions.

89. Wal-Mart has failed in Region 14 to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually. Nor does Wal-Mart specify the weight that should be according to each of the requirements for pay and promotion. Wal-Mart's pay and promotion policies and procedures are thus not capable of separation for analysis, and accordingly the entire decision-making process for compensation and promotions decisions may each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(l)(B)(i).

90. Wal-Mart's compensation and promotion policies are not job related or consistent with business necessity. Wal-Mart's own consultants and human resources staff have proposed open job posting, elimination of relocation requirements, adoption of more consistent and reliable scheduling, and the use of more objective criteria for management promotions. Adopting these policies would have resulted in less discriminatory impact upon female employees while serving Wal-Mart's business needs more effectively than its current practices.

29

91.    Wal-Mart's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

92.    Plaintiffs request relief as provided in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Ladik, Perkins, Goebel, Coggins, and Steeb-Lamb, and the proposed Rule 23 class pray for relief from Defendant Wal-Mart Stores, Inc. as follows:

1.  Certification of the Injunctive Relief and Monetary Relief subclasses as a class action under Rule 23(b)(2) and (3); designation of the Named Plaintiff Jackie Goebel as representatives of the Injunctive Relief subclass, and Sandra Ladik, Penny Perkins, Jackie Goebel, Marie Coggins and Sondra Steeb-Lamb as representatives of the Monetary Relief subclass; and designation of Plaintiffs' counsel of record as Class Counsel;

2.  All damages that the Named Plaintiffs and the Monetary Relief subclass have sustained as a result of Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of Defendant;

3.  Exemplary and punitive damages for Plaintiffs and the Monetary Relief subclass in an amount commensurate with Defendant's ability to pay and to deter future conduct;

4.  A preliminary and permanent injunction against Defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs and usages set forth herein. Such relief at minimum should include professional designed job analyses of all job positions and identification of objective, nondiscriminatory criteria for promotion decisions, record keeping that requires documentation of promotion decisions, open application and job posting procedures for promotion, training and accountability measures to ensure consistent, nondiscriminatory decision-making, and affirmative action to provide lost promotion opportunities to Plaintiffs and Injunctive Relief subclass members.

5. A declaratory judgment that the practices complained of in this Complaint are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.;

6. Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

7. Pre-judgment and post-judgment interest, as provided by law; and

8. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Date: 2/20/2013                          NICHOLS KASTER, PLLP


s/James H. Kaster
James H. Kaster (WI #1001474, MN #53946)
      kaster@nka.com
Matthew H. Morgan (MN #304657)
      morgan@nka.com
Megan I. Brennan (MN #0386550)
      mbrennan@nka.com
Katherine M. Vander Pol (MN #0390036)
      vanderpol@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878

COHEN MILSTEIN SELLERS & TOLL

Joseph M. Sellers
      jsellers@cohenmilstein.com
Christine E. Webber
      cwebber@cohenmilstein.com
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

31

**THE IMPACT FUND**

Jocelyn D. Larkin
     JDL@impactfund.org
125 University Avenue, Suite 102
Berkley, CA 94710
Telephone: (510) 845-3473
Facsimile: (510) 845-3654


ATTORNEYS FOR PLAINTIFFS AND THE
PROPOSED RULE 23 CLASS