**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

SANDRA LADIK, PENNY PERKINS,
JACKIE GOEBEL, MARIE COGGINS,
and SONDRA STEEB-LAMB, on behalf of
themselves and all others similarly situated,

       Plaintiffs,

                                           Case No. 3:13-cv-00123-bbc

v.

WAL-MART STORES, INC.,

       Defendant.

---

**MEMORANDUM IN SUPPORT OF WAL-MART STORES, INC.'S MOTION TO
DISMISS OR STRIKE CLASS CLAIMS**

---

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................................ 1

II.     Statement of Facts ..................................................................................................... 3

III.    Argument .................................................................................................................... 3

        A.      Plaintiffs' Class Allegations Are Untimely. ............................................... 3

        B.      Plaintiffs' Class Allegations Are Barred By The Supreme Court's *Dukes*
                Decision. .................................................................................................... 10

                1.      This Court Has The Authority To Dismiss Or Strike Class
                        Allegations At The Pleading Stage. ............................................... 12

                2.      Plaintiffs' Class Allegations Do Not And Cannot Satisfy Rule
                        23(a)'s Commonality Requirement ................................................ 13

                3.      Plaintiffs May Not Invoke 42 U.S.C. § 2000e-2(k)(1)(B)(i) To
                        Ameliorate Their Failure To Plead Commonality. ....................... 21

        C.      The Claims Of Those Individuals Who Have Not Satisfied Title VII's
                EEOC Charge Requirement Must Be Dismissed ...................................... 22

        D.      The Proposed Classes Violate Title VII's Particularized Venue
                Requirement ............................................................................................... 26

IV.     Conclusion ................................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*A've v. Serv. Emps. Int'l Union*,
  24 F. App'x 326 (6th Cir. 2001) ................................................................... 25

*Adams v. Woods*,
  6 U.S. 336 (1805) ................................................................................................. 7

*Alam v. Miller Brewing Co.*, __ F.3d __,
  2013 WL 692728 (7th Cir. Feb. 27, 2013) ................................................... 23

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974) .................................................................... 1, 4, 6, 26

*Andrews v. Orr*,
  851 F.2d 146 (6th Cir. 1988) ................................................................. 5, 23

*Angles v. Dollar Tree Stores, Inc.*,
  No. 10-1723, 2012 WL 4017391 (4th Cir. Sept. 13, 2012) ..................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 13

*Bacon v. Honda of Am. Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) ................................................................. 22

*Baker v. Home Depot USA, Inc.*,
  No. 11 C 6768, 2013 WL 271666 (N.D. Ill. Jan. 24, 2013) ................... 12

*Baltzer v. City of Sun Prairie Police Dep't*,
  725 F. Supp. 1008 (W.D. Wis. 1989) ..................................................... 24

*Basch v. Ground Round, Inc.*,
  139 F.3d 6 (1st Cir. 1998) ........................................................................ 5

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 13

*Bennett v. Nucor Corp.*,
  656 F.3d 802 (8th Cir. 2011) ................................................................. 21

*Bolden v. Walsh Constr. Co.*,
  688 F.3d 893 (7th Cir. 2012) ............................................... 15, 16, 19, 20

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983) ................................................................................................ 4

*Del. State Coll. v. Ricks*,
   449 U.S. 250 (1980) ................................................................................................ 6

*Dothard v. Rawlinson*,
   433 U.S. 321 (1977) .............................................................................................. 22

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) ............................................................................... 3

*Gabelli v. S.E.C.*,
   133 S. Ct. 1216 (2013) ................................................................................. 4, 6, 7

*Garcia v. Johanns*,
   444 F.3d 625 (D.C. Cir. 2006) ........................................................................... 21

*Gatto v. Indian Prairie Sch. Dist. 204*,
   No. 12-1815, 2013 WL 563287 (7th Cir. Feb. 15, 2013) .................................. 22

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................. 12, 17, 18

*Griffin v. Singletary*,
   17 F.3d 356 (11th Cir. 1994) ................................................................................ 5

*Gschwind v. Heiden*,
   692 F.3d 844 (7th Cir. 2012) .............................................................................. 14

*Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*,
   343 F.3d 897 (7th Cir. 2003) ........................................................................ 23, 25

*In re Copper Mkt. Antitrust Litig.*,
   300 F. Supp. 2d 805 (W.D. Wis. 2003) .............................................................. 4, 9

*In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*,
   __ F.3d __, 2013 WL 149853 (6th Cir. Jan. 15, 2013) ................................... 15, 19

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) .............................................................................. 13

*Korwek v. Hunt*,
   827 F.2d 874 (2d Cir. 1987) ................................................................................. 5

*Lewis v. City of Chicago*,
   130 S. Ct. 2191 (2010) ........................................................................................ 23

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith,* Inc.,
  672 F.3d 482 (7th Cir. 2012) ........................................................................ 15, 16

*Odle v. Wal-Mart Stores Inc.,*
  No. 3:11-cv-2954-O, 2012 WL 5292957 (N.D. Tex. Oct. 15, 2012) ............................... 2, 7, 25

*Peters v. Renaissance Hotel Operating Co.,*
  307 F.3d 535 (7th Cir. 2002) ........................................................................ 24

*Phipps v. Wal-Mart Stores, Inc.,*
  No. 3:12-cv-1009, 2013 WL 752152 (M.D. Tenn. Feb. 20, 2013)...................................... 2, 7

*Pilgrim v. Universal Health Card, LLC,*
  660 F.3d 943 (6th Cir. 2011) ........................................................................ 13

*Pinson v. Rumsfeld,*
  192 F. App'x 811 (11th Cir. 2006) ................................................................... 26

*Randall v. Rolls-Royce Corp.,*
  637 F.3d 818 (7th Cir. 2011) ........................................................................ 20

*Robinson v. Sheriff of Cook Cnty.,*
  167 F.3d 1155 (7th Cir. 1999) ....................................................................... 22

*Rotella v. Wood,*
  528 U.S. 549 (2000).................................................................................. 6

*Ruehl v. Viacom, Inc.,*
  500 F.3d 375 (3d Cir. 2007).......................................................................... 23

*Salazar-Calderon v. Presidio Valley Farmers Ass'n,*
  765 F.2d 1334 (5th Cir. 1985) ........................................................................ 5

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.,*
  642 F.3d 560 (7th Cir. 2011) ................................................................... 2, 7, 8, 9

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,*
  130 S. Ct. 1431 (2010)............................................................................... 9

*Sjoblom v. Charter Commc'ns, LLC,*
  No. 3:07-cv-0451-bbc, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007).................................... 13

*Smith v. Bayer Corp.,*
  131 S. Ct. 2368 (2011)............................................................................... 8

*Southwire Co. v. J.P Morgan Chase & Co.*,
  307 F. Supp. 2d 1046 (W.D. Wis. 2004) ............................................................... 4

*Villanueva v. Davis Bancorp, Inc.*,
  09 C 7826, 2011 U.S. Dist. LEXIS 103473 (N.D. Ill. Sept. 13, 2011) ...................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................... *passim*

*Yang v. Odom*,
  392 F.3d 97 (3d Cir. 2004) ................................................................................. 5

*Zipes v. Trans World Airlines, Inc.*,
  455 U.S. 385 (1982) ........................................................................................... 4

**Statutes**

28 U.S.C. § 2072(b) .................................................................................................. 5

42 U.S.C. § 2000e-2(k)(1)(B)(i) .......................................................................... 21, 22

42 U.S.C. § 2000e-5(e)(1) ................................................................................... 3, 22

42 U.S.C. § 2000e-5(f)(1) .................................................................................... 3, 22

42 U.S.C. § 2000e-5(f)(3) ....................................................................................... 26

**Rules**

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 20

Fed. R. Civ. P. 23(c)(1)(A) ..................................................................................... 12

**Other Authorities**

137 Cong. Rec. S15,276 (daily ed. Oct. 25, 1991) .................................................. 22

Brief for Resp'ts, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (No. 10-277), 2011 WL
  686407 ......................................................................................................... 10, 11

## I.     INTRODUCTION

This action is the latest of five follow-on class actions stemming from the reversal and remand of the "national class [action] against Wal-Mart Stores, Inc." filed "[o]ver ten years ago" in *Dukes v. Wal-Mart Stores, Inc.*  Compl. ¶ 1; *see also, e.g.*, Ex. 1, Fourth Amended Complaint, *Dukes v. Wal-Mart Stores, Inc.*, No. 3:01-cv-02252-CRB (N.D. Cal. Oct. 27, 2011); Ex. 2, Complaint, *Odle v. Wal-Mart Stores, Inc.*, No. 3:11-cv-2954-O (N.D. Tex. Oct. 28, 2011); Ex. 3, Complaint, *Phipps v. Wal-Mart Stores, Inc.*, No. 3:12-cv-01009 (M.D. Tenn. Oct. 2, 2012), Ex. 4, Complaint, *Love v. Wal-Mart Stores, Inc.*, No. 0:12-cv-61959-RNS (S.D. Fla. Oct. 4, 2012).[1] After more than a decade of litigation, the Supreme Court held that the *Dukes* named plaintiffs could not proceed on behalf of absent class members with whom they shared little other than their sex and the *Dukes* lawsuit.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Now the named plaintiffs here advance the *same* theory rejected by the Supreme Court to bring the *same* claims on behalf of a *meaningful* subset of the *same* putative class members.  The only real difference in this lawsuit is that, rather than challenging Wal-Mart's allegedly discriminatory practices on a national level, this action challenges those same "nationwide policies . . . as implemented and utilized" "in what was known during much of the relevant statutory period as Wal-Mart Region 14 ('Region 14')."  Compl. ¶¶ 3, 32.

Plaintiffs' class claims are barred by Title VII's statute of limitations.  Every federal circuit to have addressed the issue has concluded that the tolling rule announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553 (1974), applies only to individual claims, not to subsequent class claims, following a denial (or reversal) of class certification for failure to

---

[1] All exhibits may be found as attachments to the Decl. of Catherine A. Conway in Supp. of Wal-Mart Stores, Inc.'s Motion to Dismiss or Strike Class Claims and Request for Judicial Notice filed concurrently herewith.

meet the commonality requirement of Rule 23(a).  The Seventh Circuit agrees:  In *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011), the court "distinguish[ed] between a situation in which class status was denied in the first suit because the plaintiff was not a suitable representative, and a situation in which class status was denied because the other criteria of Rule 23(a) and (b) could not be met."  *Id.* at 564.  In the former, a second class action may be permitted; in the latter it is not.  Because this case falls into the second category, the named plaintiffs might be able to assert their individual claims here, but any claims on behalf of absent persons are untimely and barred as a matter of law.  *See Phipps v. Wal-Mart Stores, Inc.*, No. 3:12-cv-1009, 2013 WL 752152, at *30 (M.D. Tenn. Feb. 20, 2013) ("[T]he court must find that the class claims do not benefit from *American Pipe* tolling and, therefore, are time-barred."); *Odle v. Wal-Mart Stores Inc.*, No. 3:11-cv-2954-O, 2012 WL 5292957, at *9 (N.D. Tex. Oct. 15, 2012) ("[T]he Plaintiffs' class claims do not benefit from *American Pipe* tolling, are barred by the statute of limitations, and should be dismissed.").

Plaintiffs' proposed classes also fail as a matter of law for the same reasons that doomed the class claims in *Dukes*.  The Supreme Court held that the *Dukes* plaintiffs could not proceed on behalf of the nationwide class, not because of the size of that proposed class, but because plaintiffs had failed to "establish[] the existence of any common question."  *Dukes*, 131 S. Ct. at 2556–57.  The Court held that, in order to satisfy Rule 23(a)(2) commonality, plaintiffs "must begin by identifying the specific employment practice that is challenged."  *Id.* at 2555 (internal quotation marks omitted).  "Other than the bare existence of delegated discretion, [the *Dukes* plaintiffs] ha[d] identified no 'specific employment practice'—much less one that tie[d] all their 1.5 million claims together."  *Id.* at 2555–56.  Plaintiffs here continue to pursue the same legal theory of delegated discretion and once again have failed to identify "a common mode of

2

exercising discretion that pervades" the entire region.  *Id.* at 2554–55.  Accordingly, plaintiffs

have not alleged a plausible claim that they can satisfy the requirements of Rule 23(a).  For that

reason, the class claims should be dismissed with prejudice.

Finally, plaintiffs have failed to comply with important elements of Title VII's charge-

filing and special venue provisions, and the class claims should be dismissed on those bases.

## II.     STATEMENT OF FACTS

The *Dukes* plaintiffs filed their first class action complaint in June 2001, asserting that

Wal-Mart had discriminated against female employees in pay and promotion decisions since

December 1998.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 577 & n.2 (9th Cir. 2010) (en

banc).  The district court certified a nationwide class and the Ninth Circuit largely affirmed, but

the Supreme Court reversed because, among other defects, the plaintiffs had failed to "establish[]

the existence of *any* common question."  *Dukes*, 131 S. Ct. at 2556–57 (emphasis added).

The only difference between *Dukes* and the present suit is that plaintiffs now propose

narrower geographic classes.  Rather than seeking certification of a nationwide putative class,

plaintiffs seek to certify "regional" classes, "which include[ ] Wal-Mart retail stores located in

parts of Wisconsin, Illinois, Indiana, and Michigan."  Compl. ¶ 3.

## III.    ARGUMENT

### A.     Plaintiffs' Class Allegations Are Untimely.

Plaintiffs' class claims are barred by the statute of limitations.  Title VII requires

"aggrieved" individuals to file a "charge" with the Equal Employment Opportunity Commission

("EEOC") before filing a complaint in federal court.   42 U.S.C.  §  2000e-5(e)(1),

(f)(1).  Depending on whether the putative plaintiff lives in a deferral or non-deferral state, that

charge must be filed within either 180 or 300 days "after the alleged unlawful employment

practice occurred."  *Id.* § 2000e-5(e)(1).  As the Supreme Court has explained, "Congress

intended the [charge] filing period to operate as a statute of limitations" for Title VII claims. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982).

In *American Pipe*, the Supreme Court held that "the commencement of [an] original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. at 553; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (extending tolling to former class members who, instead of intervening, filed their own individual claims in another forum). The Supreme Court crafted this doctrine to allow individual claimants to rely in the first instance on the pending class action, while preserving their ability to maintain an individual suit in the event the class was not certified. It thereby struck a careful balance between the competing interests of repose advanced by statutes of limitation and interests of efficiency advanced by the class action procedures in Rule 23. *See American Pipe*, 414 U.S. at 555.

But, as a unanimous Supreme Court recently reaffirmed, "the cases in which 'a statute of limitation may be suspended by causes not mentioned in the statute itself . . . are very limited in character, and are to be admitted with great caution.'" *See Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1224 (2013) (citation omitted; alteration in original). Absent a judicial *extension* of the *American Pipe* doctrine, the class claims here are untimely; and no such extension is warranted.

*American Pipe* tolling is a judicially crafted exception to legislation requiring repose, and therefore, it must be construed narrowly. "At some point, the *American Pipe* tolling rule must give way to the goal of repose that the statute of limitations promotes." *In re Copper Mkt. Antitrust Litig.*, 300 F. Supp. 2d 805, 811 (W.D. Wis. 2003); *see also Southwire Co. v. J.P Morgan Chase & Co.*, 307 F. Supp. 2d 1046, 1064 (W.D. Wis. 2004) ("[C]lass actions c[an]not

be stacked for tolling purposes."), *rev'd in part and aff'd in part by In re Copper Antitrust Litig.*, 436 F.3d 782 (7th Cir. 2006). For this reason, while the pendency of an *initial* class action might toll the statute of limitations for the claims of individual plaintiffs under *American Pipe*, every court of appeals to consider the issue has held that *American Pipe* tolling does not extend to *subsequent class* allegations after the denial (or reversal) of class certification for failure to meet the requirements of Rule 23(a) or (b). *See Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988) (noting that the "courts of appeals that have dealt with this issue appear to be in unanimous agreement" (collecting cases)).[2] As a result, the individual claims of putative plaintiffs in Region 14 were tolled during the pendency of the *Dukes* action, and once the Supreme Court definitively rejected the nationwide class for failure to satisfy Rule 23's requirements, those individuals who wished to pursue claims had an obligation to act. For those who did not, their claims became barred by the statute of limitations, and those claims cannot be revived through the actions of others by the filing of a subsequent class action.

This "anti-stacking" rule, which prohibits class action claims from being tolled indefinitely, is not just good policy, but is also required by the Rules Enabling Act, which provides that Rule 23 may not be used to "abridge, enlarge or modify any substantive right." 28

---

[2] *See, e.g.*, *Angles v. Dollar Tree Stores, Inc.*, No. 10-1723, 2012 WL 4017391, at *4 n.10 (4th Cir. Sept. 13, 2012) ("Courts have consistently concluded that *American Pipe/Crown, Cork & Seal* do not permit class actions to toll the statute of limitations for additional classes to be stacked upon them."); *Yang v. Odom*, 392 F.3d 97, 104 (3d Cir. 2004) ("*American Pipe* tolling will not apply to sequential class actions where the earlier denial of certification was based on a Rule 23 defect in the class itself."); *Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) ("The Supreme Court in *American Pipe* and *Crown, Cork* certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints."); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985) ("[P]utative class members may [not] piggyback one class action onto another and thus toll the statute of limitations indefinitely.").

U.S.C. § 2072(b).  Because tolling of subsequent class claims is inconsistent "*both* with the procedures of Rule 23 and with the proper function of the limitations statute," it is prohibited by the Rules Enabling Act.  *American Pipe*, 414 U.S. at 555 (emphasis added); *see also id.* at 557–58 ("[T]olling the limitation in a given context" must be "consonant with the legislative scheme.").

A contrary rule would eviscerate important statutory goals under Title VII as the limitation provisions "protect employers from the burden of defending claims arising from employment decisions that are long past."  *See, e.g.*, *Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980).  This is particularly true where, as here, the court has found that the initially proposed class failed to satisfy the requirements of Rule 23 due to a lack of commonality among the putative plaintiffs.  *Compare American Pipe*, 414 U.S. at 555 n.25 (finding that the problem of unfair surprise is "minimized when, as here, the District Court has already found that the named plaintiffs' claims typify those of the class"), *with Dukes*, 131 S. Ct. at 2557 (holding that the putative *Dukes* class members had "little in common but their sex and this lawsuit") (internal quotation marks omitted).

The Supreme Court has repeatedly warned that particular caution must be exercised where plaintiffs seek "a rule that would . . . 'extend[ ] the limitations period to many decades' because such a rule [is] 'beyond any limit that Congress could have contemplated' and 'would . . . thwart[ ] the basic objective of repose underlying the very notion of a limitations period.'"  *Gabelli*, 133 S. Ct. at 1223 (quoting *Rotella v. Wood*, 528 U.S. 549, 554 (2000)).  As *Gabelli* highlights, this is all the more true where, as here, government-sanctioned punishment, including punitive damages, is sought:  "Chief Justice Marshall used particularly forceful language in emphasizing the importance of time limits on penalty actions, stating that it 'would be utterly

repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time.'" *Id.* (quoting *Adams v. Woods*, 6 U.S. 336, 342 (1805)); Compl., Prayer for Relief, ¶ 3 (seeking "[e]xemplary and punitive damages").

The well-established anti-stacking rule has therefore led to the dismissal of substantively identical class claims brought in the wake of *Dukes* in the Middle District of Tennessee and the Northern District of Texas. *See Phipps*, 2013 WL 752152, at *30 ("[T]he court must find that the class claims do not benefit from *American Pipe* tolling and, therefore, are time-barred."); *Odle*, 2012 WL 5292957, at *9 ("[T]he Plaintiffs' class claims do not benefit from *American Pipe* tolling, are barred by the statute of limitations, and should be dismissed."). Dismissal of the class claims asserted here is equally warranted.

Wal-Mart expects that the named plaintiffs will argue that the Seventh Circuit's decision in *Sawyer* dictates a different result in this case. Any such argument would be incorrect for several reasons.

At the outset, *Sawyer* is inapposite. The factual scenario before the Seventh Circuit, and thus the only one encompassed by its holding, was one in which the original named plaintiff *voluntarily dismissed* the lawsuit *before* any court had ruled on the propriety of class certification. *See* 642 F.3d at 561 (issue before the Seventh Circuit was whether *American Pipe* "come[s] into play when the first suit is dismissed voluntarily"); *id.* at 562 (noting that absent class members "did not have any way to prevent [the initial plaintiff] from dismissing the original suit"); *id.* at 564–65 ("Because Park Bank dismissed its suit before the state judge could decide whether to certify the class, that disposition does not carry any force for any class member other than Park Bank."). The *holding* of *Sawyer* is that "there is no basis for binding other members of the putative class, who have yet to receive a judicial decision on the question

whether a class is certifiable under Rule 23[,] . . . *when the original plaintiff abandons the class*, as Park Bank did." *Id.* at 564 (emphasis added).  That holding has no application here since the original named plaintiffs—Betty Dukes and the other individuals who initiated the *Dukes* lawsuit—did *not* abandon the class by dismissing the suit voluntarily prior to a certification decision.

Unlike *Sawyer*, this case proceeded to class certification and the Supreme Court definitively held that certification was improper because the named plaintiff had failed to prove even a single common question under Rule 23(a).  As noted above, the courts of appeals have uniformly refused to extend *American Pipe* tolling to subsequent class actions where the earlier class was denied for want of commonality.  The *Sawyer* court acknowledged this unbroken line of decisions and explained, in no uncertain terms, that "[t]here is no conflict" between its disposition and those cases.  642 F.3d at 563.  The court went out of its way to "distinguish between a situation in which class status was denied in the first suit because the plaintiff was not a suitable representative, and a situation in which class status was denied because the other criteria of Rule 23(a) and (b) could not be met."  *Id.* at 564; *see also id.* ("These two situations seem to us different, for the reasons we have given.").  *Sawyer* involved the former situation, whereas this case (like *Odle* and *Phipps*) involves the latter, "different" situation.  *Sawyer* thus does not preclude, but rather affirmatively supports, dismissal of the class claims as time-barred since the original certification failed for absence of commonality.

In *dicta*, *Sawyer* analyzed the anti-stacking rule in terms of "issue preclusion."  642 F.3d at 563–64.  The Supreme Court has since clarified the interplay between class certification decisions and issue preclusion principles as they pertain to absent class members.  *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2382 (2011) (holding, in the context of the Anti-Injunction Act,

that absent class members were not barred by issue preclusion from pursuing additional timely

class suits in state courts).  As one court has recognized, "it is possible that *Sawyer*'s *reasoning*

would have been different had it been decided before [*Smith*]."  *Villanueva v. Davis Bancorp,*

*Inc.*, 09 C 7826, 2011 U.S. Dist. LEXIS 103473, at *8 n.3 (N.D. Ill. Sept. 13, 2011) (emphasis

added).  But any tension between *Smith* and *Sawyer* is not pertinent to the resolution of this

motion, because the outer bounds of the *American Pipe* rule are not set by principles of issue

preclusion, but by the balance of efficiency and repose struck by the Supreme Court in *American*

*Pipe* and *Crown, Cork & Seal.   See Copper Mkt. Antitrust Litig.*, 300 F. Supp. 2d at 812

("*Crown, Cork & Seal* sets the outer limits of the *American Pipe* doctrine.") (internal quotation

marks omitted).  *Sawyer* agreed that—regardless of how the question is analyzed—the statute of

limitations for class claims is not tolled under *American Pipe* where, as here, the initial class was

decertified for lack of commonality.  *See Sawyer*, 642 F.3d at 564.  That is sufficient to dispose

of the class claims in this case.

The *Sawyer* court also asserted that "[t]o the extent that the eleventh circuit may believe

that Rule 23 must be set aside when a suit's timeliness depends on a tolling rule, that view

cannot be reconciled with [*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,

130 S. Ct. 1431 (2010)], which holds that Rule 23 applies to all federal civil suits, even if that

prevents achieving some other objective that a court thinks valuable."  642 F.3d at 564.  But

neither the Eleventh Circuit (in *Griffin*) nor any of the other courts applying the anti-stacking

rule have said that "Rule 23 must be set aside"; on the contrary, they hold that the procedural

aspects of Rule 23 provide no basis for overriding the substantive statute of limitations

established in Title VII where, as here, the original class action fails for want of commonality

under Rule 23(a).  Nothing in *Shady Grove* casts doubt on that proposition, and the Supreme

Court's more recent decision in *Gabelli* affirmatively supports it.  Thus, nothing in *Sawyer* stands in the way of the relief sought by Wal-Mart here.[3]

Accordingly, this Court should continue to safeguard the careful balance struck by the Supreme Court between efficiency and repose by denying plaintiffs' request to extend *American Pipe* and *Crown, Cork & Seal* to revive their untimely class claims.

**B.      Plaintiffs' Class Allegations Are Barred By The Supreme Court's *Dukes* Decision.**

Plaintiffs' class allegations should also be dismissed or stricken for failure to state a plausible claim for classwide relief under the Supreme Court's decision in *Dukes*.  The complaint here, filed by former members of the *Dukes* class, brings class claims that are substantively indistinguishable from those brought (and found to be lacking in commonality) in *Dukes* and, accordingly, fail as a matter of law.

The *Dukes* plaintiffs, represented by the same counsel who represent plaintiffs here, alleged that Wal-Mart engaged in unlawful discrimination by delegating decisionmaking authority to managers and allowing those managers to rely on "unweighted, arbitrary and subjective criteria," including "gender stereotypes."  Ex. 5, *Dukes* Third Am. Compl. ¶ 29.  Specifically, the *Dukes* plaintiffs claimed that "[a]ll hourly employees at every Wal-Mart store are compensated pursuant to the same general pay structure."  Brief for Resp'ts at 18, *Dukes*, 131 S. Ct. 2541 (No. 10-277), 2011 WL 686407, at *18 [hereinafter "Br. of Resp'ts"] (internal quotation marks omitted).  They explained that at Wal-Mart the challenged pay and promotion decisions were made by store managers in the first instance, with supervision and approval by district and regional managers.  *See id.* at *17–18 (alleging that (1) "[w]hile store managers are granted substantial discretion in making hourly pay decisions, any pay increase above a certain

---

[3] To the extent this Court construes *Sawyer* as precluding the dismissal of the class claims in this case, Wal-Mart reserves the right to ask the Seventh Circuit to revisit *Sawyer* in light of *Smith*, *Gabelli*, and other developments.

percentage is automatically reported to higher management and requires special approval," (2) "pay rates are set . . . primarily by District Managers (the first level in the management hierarchy above Store Managers) and their superiors, the . . . Regional Managers," and (3) "[r]egional and district managers . . . make *all* promotion decisions for *all* store management positions") (internal quotation marks omitted).  The *Dukes* plaintiffs did not allege, however, that these decisions were made pursuant to an explicit policy of sex discrimination—nor could they have, since "Wal-Mart's announced policy forbids sex discrimination . . . [and] imposes penalties for denials of equal employment opportunity."  *Dukes*, 131 S. Ct. at 2553.  Instead, the *Dukes* plaintiffs alleged that Wal-Mart failed to provide "job-related criteria for setting pay or making promotion decisions," largely leaving these decisions to each manager's discretion.  Br. of Resp'ts at *1.  In short, "[t]he basic theory of their case [was] that a strong and uniform 'corporate culture' permit[ted] bias against women to infect . . . the discretionary decisionmaking of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory practice."  *Dukes*, 131 S. Ct. at 2548.

Plaintiffs here make these same allegations.  *See* Ex. 6 (chart comparing the allegations made in this case to those made in respondents' briefing to the Supreme Court in *Dukes*).  Like the *Dukes* plaintiffs, plaintiffs here do not allege that Wal-Mart had an explicit policy of sex discrimination.  Instead, they allege that "[i]n the absence of job-related compensation and promotion criteria, Wal-Mart's managers rely on discriminatory stereotypes and biased views about women in making pay and promotion decisions in Region 14."  Compl. ¶ 74.  Indeed, plaintiffs plainly admit that they challenge the very same "nationwide policies . . . as implemented and utilized by Region 14 management."  *Id.* ¶ 32.  The basic theory of plaintiffs'

class claims is indistinguishable from the theory presented to and rejected by the Supreme Court in 2011.

Only one thing has changed:  plaintiffs have narrowed the geographic scope of the proposed class from a national class to regional classes "includ[ing] Wal-Mart retail stores located in parts of Wisconsin, Illinois, Indiana, and Michigan."  Compl. ¶ 3.   Nonetheless, plaintiffs persist in challenging the employment decisions made by hundreds of department, store, district/market, and regional managers across an estimated 84 Wal-Mart stores in the region.  *See id.* ¶ 9; *see also, e.g., id.* ¶ 16(b) (alleging that named plaintiff Penny Perkins had a role in evaluating and recommending pay increases for associates at her store as a department manager); ¶ 41 (store managers have "the initial responsibility to set pay rates for individual hourly employees"); ¶¶ 41, 43 (district managers may "approve or disapprove" of pay rates set by store managers if they are "above or below [Wal-Mart's] guidelines"); ¶ 44 (regional managers and vice presidents receive and review reports of associates receiving 10% below or 5% above the average pay in that class"); ¶ 56 (market managers select management trainees).

1.      **This Court Has The Authority To Dismiss Or Strike Class Allegations At The Pleading Stage.**

Rule 23 provides that a court shall rule on class certification "[a]t an early practicable time after a person sues or is sued as a class representative."  Fed. R. Civ. P. 23(c)(1)(A).  The Supreme Court has recognized that class claims may be resolved at the pleading stage where it is "plain enough from the pleadings" that the class cannot be certified.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Courts have also considered motions to dismiss or strike class allegations under the authority of Rules 12(f) and 23(d)(1)(D).  *See, e.g., Baker v. Home Depot USA, Inc.*, No. 11 C 6768, 2013 WL 271666, at *4 (N.D. Ill. Jan. 24, 2013) ("Where pleadings are facially defective and definitively establish that a class action cannot be

maintained, the court can properly grant a motion to strike class allegations at the pleading stage." (internal quotation marks omitted)); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

Under Rule 12(b)(6), district courts must assess the sufficiency of a plaintiff's allegations before opening the doors to discovery. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 558 (2007). There is no less a duty to examine the sufficiency of the pleadings where the plaintiff seeks the keys to costly class discovery. *See Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-cv-0451-bbc, 2007 WL 4560541, at *6 (W.D. Wis. Dec. 19, 2007) ("[Rule 23] prerequisites must be alleged in the complaint at the time of its filing . . . . Because defendants challenge class certification solely on the basis of the allegations in the complaint, the proper standard is the same as that applied in deciding a motion to dismiss for failure to state a claim."); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming dismissal of class allegations pursuant to Rule 12(b)(6) for failure to plead an ascertainable class). To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### 2.   Plaintiffs' Class Allegations Do Not And Cannot Satisfy Rule 23(a)'s Commonality Requirement.

Commonality requires more than allegations that plaintiffs "have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. "[T]he mere claim by employees of the same company that they have suffered a Title VII injury . . . gives no cause to believe that all their claims can productively be litigated at once." *Id.*  Rather, plaintiffs must allege facts that plausibly suggest class members "have suffered the same injury" and that class treatment is

likely to "generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted).[4]

The class claims here fail to satisfy this standard for one "fundamental" reason. 131 S. Ct. at 2555. "Other than the bare existence of delegated discretion, [plaintiffs] have identified no 'specific employment practice'—much less one that ties all their [class] claims together." *Id.* at 2555–56. At best, plaintiffs' complaint establishes that Wal-Mart had a "policy of *allowing discretion* by local supervisors over employment matters," but the *Dukes* plaintiffs also "convincingly establishe[d]" the existence of this very policy. *Id.* at 2554. And the *Dukes* Court expressly rejected the theory that such a policy could satisfy commonality (*id.*), holding that "an employer's policy of granting its supervisors discretion to make personnel decisions can't be the subject of a class action against the employer by employees complaining of discrimination by the supervisors," *Gschwind v. Heiden*, 692 F.3d 844, 848 (7th Cir. 2012) (Posner, J.) (citing *Dukes*, 131 S. Ct. 2541). The Supreme Court was unequivocal—finding that delegated discretion is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action," as well as "a very common and presumptively reasonable way of doing business." *Dukes*, 131 S. Ct. at 2554; *see also id.* at 2556 ("Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice.").

As the Supreme Court explained, the existence of subjective decisionmaking "does not lead to the conclusion that every employee in a company using a system of discretion has . . . a claim in common. To the contrary, left to their own devices most managers in any corporation— and surely most managers in a corporation that forbids sex discrimination—would select sex-

---

[4]  Plaintiffs would also be unable to establish other Rule 23 requirements, but this argument focuses primarily on commonality, which the Supreme Court directly ruled upon in *Dukes* and which is therefore appropriate for resolution on a motion to dismiss or strike. Wal-Mart reserves the right to address other Rule 23 requirements in more detail if the need arises.

neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all." 131 S. Ct. at 2554.  While "[o]thers may choose to reward various attributes that produce disparate impact . . . [a]nd still other managers may be guilty of intentional discrimination." *Id.* Thus, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.*

For this reason, the Seventh Circuit has held that "Rule 23(a)(2) blocks certification" of a class where, "as here, the plaintiffs contend[] that discretionary acts by local managers . . . produced discriminatory effects." *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 896 (7th Cir. 2012) (Easterbrook, J.); *see also In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, __ F.3d __, 2013 WL 149853, at *4 (6th Cir. Jan. 15, 2013) (delegation of discretion is "legally insufficient" to support a finding of commonality under *Dukes*).  As Judge Posner has explained, *Dukes* "holds that if employment discrimination is practiced by the employing company's local managers, exercising discretion granted them by top management . . . , rather than implementing a uniform policy established by top management to govern the local managers . . . the incidents of discrimination complained of do not present a common issue that could be resolved efficiently in a single proceeding." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 488 (7th Cir.), *cert denied*, 133 S. Ct. 338 (2012).[5]

---

[5] As the Seventh Circuit later explained, *McReynolds* allowed certification of a disparate impact class challenging the defendant's "national policy allowing brokers to form and distribute commissions within teams" because this policy was "adopted by top management and applied to all of Merrill Lynch's offices throughout the nation."  *Bolden*, 688 F.3d at 897–98.  In so doing, *McReynolds* highlighted two important features of the proposed class that distinguished it from *Dukes*, thereby allowing it to move forward.  First, *McReynolds* was exclusively a disparate impact case which rendered the "presence or absence of discriminatory intent . . . irrelevant."  672 F.3d at 490.  Second, the class challenged nationwide "practices of Merrill Lynch, rather than practices that local managers c[ould]

As in *Dukes*, the crux of plaintiffs' class claims is that "the discretion exercised by their local supervisors over pay and promotion matters violates Title VII by discriminating against women." 131 S. Ct. at 2547. To be sure, plaintiffs have studiously avoided the use of the word "discretion" in this complaint, instead purporting to challenge Wal-Mart's "failure to require or use job related criteria for making compensation decisions," and "to apply job-related objective criteria for making management selections." Compl. ¶ 88; *see also id.* ¶¶ 49, 56, 58, 59, 74. But these allegations "boil down to the policy affording discretion to [local managers]—and [*Dukes*] tells us that local discretion cannot support a company-wide [or region-wide] class no matter how cleverly lawyers may try to repackage local variability as uniformity." *Bolden*, 688 F.3d at 898 & n.1 (holding that similar allegations, including that the employer had a "Policy/Practice of allowing foreman and supervisors to make promotion decisions without reference to any objective criteria," could not support a company-wide class action across multiple construction sites). Simply put, "when multiple managers exercise independent discretion, conditions at different stores (or sites) do not present a common question." *Id.* at 896.

Even if a system of delegated decisionmaking could support class certification under certain circumstances, the Supreme Court has already held that such circumstances are not present at Wal-Mart, concluding that it was "quite unbelievable that all managers would exercise their discretion in a common way without some common direction." *Dukes*, 131 S. Ct. at 2555.

Moreover, plaintiffs' proffered anecdotes do not match the theory of commonality advanced in their complaint. Plaintiffs allege that the "Regional Vice Presidents monitor and

---

choose or not at their whim." *Id.* Based on these two features, the Seventh Circuit held that "challenging those policies in a class action [was] not forbidden by the [*Dukes*] decision; rather that decision helps . . . to show on which side of the line that separates a company-wide practice from an exercise of discretion by local managers this case falls." *Id.* Neither of these distinguishing features is present in this case, and thus the *Dukes* decision forbids plaintiffs' class claims here.

implement corporate and regional policies regarding compensation and promotion, and provide final approval regarding the pay and promotion decisions." Compl. ¶ 25. Yet, the complaint does not contain even a single allegation that any Regional Vice President, or for that matter any regional manager at all, took part in any discriminatory act or decision. In short, they do not allege a single factual allegation to support their theory that the various managers who have held that role over the past 14 years intentionally discriminated against every female employee in Region 14. Similarly, while plaintiffs also allege that "District Managers . . . have made or approved compensation and promotion decisions for the stores," *id*. ¶ 23, they fail to describe even one discriminatory decision made by a district manager, much less allege facts that would allow a reasonable person to conclude that every such decision was made with illegal intent and for an unlawful purpose.

Instead, the complaint continues to allege that store managers had primary responsibility for pay decisions in Region 14, *see* Compl. ¶ 41, and provides a total of nine anecdotes of allegedly biased decisionmaking at the hands of various Store and Department Managers. *Id.* ¶¶ 16(a)-(e), 79(a)-(d). These allegations are not enough. "Even if every single one of these accounts is true, that would not demonstrate that the entire [Region] 'operate[d] under a general policy of discrimination,' which is what [plaintiffs] must show to certify [a region-wide] class." *Dukes*, 131 S. Ct. at 2556 (quoting *Falcon*, 457 U.S. at 159 n.15) (citation omitted). Indeed, as if to avoid any doubt that decisions about pay in particular are left to the discretion of individual store managers, the complaint alleges that "[t]he Regional Vice Presidents and Market Managers *do not hold the Store Managers in Region 14 accountable* for the factors they use in making pay decisions." Compl. ¶ 49 (emphasis added). "Without some glue holding the alleged *reasons* for all [the challenged] decisions together, it will be impossible to say that examination of all the

17

class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." 131 S. Ct. 2552.  Plaintiffs here wholly fail to allege any such glue.

Nor may plaintiffs argue that "the absence of an open application process and job posting, [Wal-Mart's] application of attendance disciplinary policies, its relocation, travel and availability requirements for management positions, [or] its scheduling requirements which deny managers a consistent schedule" can serve as the "glue" to bind a class together.  Compl. ¶ 88.  First, these procedures were not "reflected in [Wal-Mart's pay] practices . . . in the same way [they were] manifested in the promotion practices," and thus they cannot be challenged in an across-the-board class action.  *Falcon*, 457 U.S. at 158.  Delegated discretion is the only policy that plaintiffs claim applies to both pay and promotion decisions.   Second, plaintiffs acknowledge through their own assertions that such policies were inconsistently applied, and some of these policies changed considerably during the time period covered by the complaint. *See, e.g.*, Compl. ¶ 53 (alleging that Wal-Mart implemented a system for posting open positions in 2004 and "adopted a formalized application process for certain positions called Career Preferences" in 2006); *id.* ¶ 81 (indicating that Wal-Mart instituted financial consequences for failure to meet diversity goals in 2004).  As these allegations demonstrate, with the exception of delegated discretion, plaintiffs do not allege that any of Wal-Mart's regions operated under any ***one*** common policy that applied to all of the putative class members for the duration of the alleged class period.

Finally, as in *Dukes*, plaintiffs attempt to allege commonality by reference to statistical disparities and anecdotes, but these allegations "fall[ ] well short."  *Dukes*, 131 S. Ct. at 2555.  Plaintiffs' allegations concerning statistical disparities, "[e]ven if . . . taken at face value, . . . are insufficient to establish that [plaintiffs'] theory can be proved on a classwide basis."  *Id.*

Plaintiffs allege that a "gender-based pay difference . . . adverse to women . . . exists in each of the Districts, and in the *vast majority* of the stores, in Region 14, even when nondiscriminatory objective factors . . . are taken into account." Compl. ¶ 50 (emphasis added). By plaintiffs' own admission, however, this statistical disparity "cannot by itself establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends." *Dukes*, 131 S. Ct. at 2555. As the Supreme Court held, "[m]erely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice." *Id.* at 2556; *see also Bolden*, 688 F.3d at 896–97 (explaining why this type of statistical disparity cannot support a finding of commonality under Rule 23); *In re Countrywide*, 2013 WL 149853, at *4 ("*Dukes* reiterates that statistical correlation, no matter how robust, cannot substitute for a specific finding of class-action commonality.").

Plaintiffs' anecdotal evidence is likewise far "too weak to raise any inference that all the individual, discretionary personal decisions [within each region] are discriminatory." 131 S. Ct. at 2556. Indeed, aside from those of the named plaintiffs, the complaint provides only four anecdotes of allegedly discriminatory bias by managers within Region 14. *See* Compl. ¶ 79. Some of these anecdotes fail to raise inferences of *individual* discrimination, much less a common policy of discrimination. For example, plaintiffs allege that "proposed class member Miriam Briggs-Muhammed was told by the Personnel Manager she was 'not management material' and was rejected for the [Management in Training] program." *Id.* ¶ 79(a). But this allegation says nothing about the reasons *why* Ms. Briggs-Muhammed was denied a promotion. Indeed, plaintiffs fail to even allege that she satisfied all of the minimum qualifications to enter the management program. *Compare id.* ¶ 56 (describing minimum qualifications for management training program, including clean disciplinary record and satisfactory performance

evaluations), *with id*. ¶ 79(a) (alleging only that Ms. Briggs had a "long employment history at Wal-Mart" and successfully completed tests for entry into the program).  Another proposed class member was allegedly told that "if [she] were a man, [she] would know," but plaintiffs provide no context whatsoever for this purportedly "derogatory comment[]," to suggest what it referred to, much less that it had any effect on her pay or promotions at Wal-Mart.  *Id.* ¶ 79(d).

The allegations of the named plaintiffs do nothing to fill this void.  Plaintiffs Sandra Ladik, Penny Perkins,[6] and Jackie Goebel[7] only bring individualized allegations relating to pay at their respective stores.  Compl. ¶ 16(a)–(c).  Collectively, these three plaintiffs worked at only three out of the 84 stores alleged to be part of Region 14, and thus their allegations cannot be used to infer a region-wide policy of pay discrimination.  *See id.* ¶¶ 10–12.  Only two named plaintiffs bring promotions claims.  Plaintiff Marie Coggins alleges that she "*began* expressing her interest in salaried management positions in 2009" and quit shortly thereafter in 2010.  *Id.* ¶ 16(d) (emphasis added).  Meanwhile, plaintiff Sondra Steeb-Lamb alleges that she was promoted to an assistant manager position despite admitted performance issues, which then prevented her from receiving further promotions.  *Id.* ¶ 16(e) (alleging that Ms. Steeb-Lamb "received many 'coachings' from her Store Manager, many [but not all] of which were for

---

[6]  Ms. Perkins also alleges that she had a role in evaluating and recommending pay increases for associates at her store as a department manager, which raises concerns over the adequacy of her representation.  *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (questioning the adequacy of representative plaintiffs who had "authority within the company with regard to the compensation of some, and maybe many, of the unnamed class members and, as worrisome, over male employees in the same job categories as the class members").

[7]  Notably, the complaint names only Ms. Goebel as a representative of the injunctive relief class, Compl., Prayer for Relief ¶ 1, but because Ms. Goebel only brings a pay discrimination claim herself, she cannot serve as a representative for a promotions class as well.  *See* Fed. R. Civ. P. 23(a)(3); *Bolden*, 688 F.3d at 895 ("[A]cross-the-board classes are incompatible with Fed. R. Civ. P. 23.").  The other named plaintiffs are no longer employed at Wal-Mart, and therefore do not have standing to pursue an injunction claim of any type.  *See Dukes*, 131 S. Ct. at 2559–60.  Thus, plaintiffs' request for classwide injunctive relief on their promotions claim must be dismissed.

insignificant issues"). These allegations are hardly sufficient to support a claim of discrimination by either Ms. Coggins or Ms. Steeb-Lamb, let alone a putative class comprised of thousands of employees working in 84 stores across four states over a 14-year period.

"Because [plaintiffs] provide[d] no convincing [allegations] of a [region-wide] discriminatory pay and promotion policy," they have failed to establish the "existence of any common question," and their class claims must be dismissed. *Dukes*, 131 S. Ct. at 2556–57.

### 3.      Plaintiffs May Not Invoke 42 U.S.C. § 2000e-2(k)(1)(B)(i) To Ameliorate Their Failure To Plead Commonality.

In an effort to circumvent the Supreme Court's admonishment that Title VII plaintiffs who seek to litigate class claims "must begin by identifying the specific employment practice that is challenged," *Dukes*, 131 S. Ct. at 2555 (internal quotation marks omitted), plaintiffs invoke 42 U.S.C. § 2000e-2(k)(1)(B)(i) and suggest that the "elements of Wal-Mart's compensation [and promotion] decision-making are not capable of separation for analysis," Compl. ¶¶ 52, 89. However, this provision cannot be used to ameliorate plaintiffs' burden of pleading, and ultimately proving, that specific employment practices or policies impacted every proposed class member similarly under Rule 23(a). *Dukes*, 131 S. Ct. at 2554. "[T]he 'one employment practice' notion . . . does not alter the required commonality showing under Federal Rule of Civil Procedure 23(a)(2). [Instead, plaintiffs] erroneously confuse the commonality showing with the prima facie case of disparate impact discrimination." *Garcia v. Johanns*, 444 F.3d 625, 634 n.10 (D.C. Cir. 2006); *See Bennett v. Nucor Corp.*, 656 F.3d 802, 815 (8th Cir. 2011) (distinguishing between the "categorization of employment practices for purposes of establishing a *prima facie* case of disparate impact" and class certification; for class certification purposes, plaintiffs challenging the use of subjective evaluations "must demonstrate that the employer had a policy of allowing discretion by lower-level supervisors over employment

matters . . . *and that all* supervisors 'exercise[d] their discretion in a common way'" (quoting *Dukes*, 131 S. Ct. at 2554–55) (emphasis added)), *cert. denied*, 132 S. Ct. 1807 & 1861 (2012); *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572 (6th Cir. 2004).

Moreover, section 2000e-2(k)(1)(B)(i) is inapplicable in this case. This provision only applies where plaintiffs challenge a standard or test consisting of two or more interconnected components. *See* 137 Cong. Rec. S15,276 (daily ed. Oct. 25, 1991) (Title VII's official "Interpretive Memorandum") (explaining that "[w]hen a decision-making process includes particular, functionally-integrated practices which are components of the same criterion, standard, method of administration, or test, such as the height and weight requirements designed to measure [the] strength [of an applicant] in *Dothard v. Rawlinson*, 433 U.S. 321 (1977)," this provision allows "the particular, functionally-integrated practices [to] be analyzed as one employment practice"). Plaintiffs make no such claim here. *Dukes*, 131 S. Ct. at 2553.

## C. The Claims Of Those Individuals Who Have Not Satisfied Title VII's EEOC Charge Requirement Must Be Dismissed.

Failure to exhaust the Title VII charge filing requirement, *see* 42 U.S.C. § 2000e-5(e)(1), (f)(1), precludes an individual or class action lawsuit. *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1156 (7th Cir. 1999) (Posner, J.) (filing "a charge of discrimination with the EEOC, . . . is a prerequisite to filing a Title VII lawsuit"). Yet, the named plaintiffs assert claims on behalf of thousands of absent class members who admittedly have not filed charges with the EEOC. *See* Compl. ¶ 86 (alleging only that named plaintiffs have complied with the charge filing requirement). The Court should dismiss these claims.

Although this circuit treats failure to exhaust administrative remedies as an affirmative defense, a district court may grant a motion to dismiss where plaintiffs' failure to satisfy this requirement is obvious from the face of the complaint. *Gatto v. Indian Prairie Sch. Dist. 204*,

No. 12-1815, 2013 WL 563287, at *2 (7th Cir. Feb. 15, 2013) ("[T]hough failure to exhaust administrative remedies is an affirmative defense, the defense in this instance is obvious from the face of Gatto's amended complaint." (citations omitted)); *Alam v. Miller Brewing Co.*, __ F.3d __, 2013 WL 692728, at *4 (7th Cir. Feb. 27, 2013) ("[W]e conclude that the district court properly dismissed Alam's Title VII claim against Miller Brewing for failure to exhaust administrative remedies.").

In failing to allege that absent class members satisfied Title VII's charge filing requirement, the plaintiffs implicitly argue that those absent class members may "coattail" on the charges filed by the named plaintiffs and others.  It is evident from the face of the complaint and the named plaintiffs' charges that they may not.  As a preliminary matter, regardless of its applicability in an initial class action, "coattailing" on administrative charges filed by others is wholly inappropriate in a subsequent class action where class certification was earlier denied for lack of commonality.  *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3d Cir. 2007); *Andrews*, 851 F.2d at 150 ("Once the class action ends . . . the employee is required to bring her individual claim to the attention of the employer by filing an administrative complaint with her EEO counselor.").  Any rationale for applying coattailing evaporates after decertification, particularly for lack of commonality, because "dissimilarity frustrates the EEOC's goals of notice and conciliation." *Ruehl*, 500 F.3d at 389.[8]

Moreover, use of the "single-filing rule" is particularly inappropriate in this case, because in order to coattail on another's EEOC charge, the claims must "arise from the *same* facts rather than merely from facts that resemble each other or are casually linked to each other."  *Horton v.*

---

[8]  The Supreme Court has never decided whether the coattailing doctrine is consistent with the statutory text and purposes of Title VII (*see Lewis v. City of Chicago*, 130 S. Ct. 2191, 2197 n.4 (2010)), and Wal-Mart reserves the right to argue at the appropriate stage that it violates Title VII and the Rules Enabling Act.

*Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 901 (7th Cir. 2003) (emphasis added); *accord Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535 (7th Cir. 2002) ("[T]he EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*.") (internal quotation marks omitted).  Plaintiffs' proposed application of coattailing far exceeds that limitation.   The named plaintiffs' bare bones charges contain only generic statements of discrimination, and avoid any specific allegations as to the discriminatory conduct they seek to challenge or the individuals involved, rendering impossible a determination that the claims of absent class members arise from the "same facts" or conduct.  *See* Exs. 7–11, EEOC Charges of Named Plaintiffs.  *Cf. Baltzer v. City of Sun Prairie Police Dep't*, 725 F. Supp. 1008 (W.D. Wis. 1989) (explaining that "'to allow litigants to expand an EEOC charge to include virtually any type of discrimination simply by including the phrase 'terms and conditions of employment' would frustrate Title VII's policy that plaintiffs should not have unrestrained ability to litigate allegations of discrimination that are neither contained in the EEOC charge nor investigated by the EEOC.'") (citation omitted).

Even if *certain* absent class members could coattail on the named plaintiffs' charges (which is doubtful)—the charges simply *cannot* support the scope of the class alleged here, which covers 84 stores in four states over a 14-year period.  Compl. ¶¶ 3–5, 9.  The named plaintiffs' EEOC charges allege discrimination in only nine of the 84 Wal-Mart stores in Region 14.  Exs. 7–11.  Charges alleging discrimination in a fraction of Wal-Mart's individual stores in Region 14 cannot satisfy the "same facts" coattailing standard for an entire regional class, because the Supreme Court already expressly rejected the notion that discrimination in *different* Wal-Mart stores arises from the *same facts*.  *See Dukes*, 131 S. Ct. at 2557 (holding that female Wal-Mart employees in different stores have "'little in common but their sex and this lawsuit'")

24

(citation omitted).

The plaintiffs also suggest that they may coattail on the earliest EEOC claim filed by a member of the *Dukes* class—an October 22, 1999 complaint filed by Stephanie Odle.[9]  Compl. ¶ 5.  But Ms. Odle has no timely EEOC claim on which to coattail.  The statute of limitations for her claim expired after she was ejected from the *Dukes* class in 2010 and took no action to pursue her rights.  *Odle*, 2012 WL 5292957, at *10 ("Odle was required to file a new lawsuit in order to protect her claims, and her failure to do so within the statute of limitations now bars her claims.").  Since Ms. Odle was time-barred from filing suit in her own right long before this case was filed, plaintiffs here cannot coattail on her now expired charge.  *See Horton*, 343 F.3d at 898–99 ("[A] timely administrative charge [is] the normal prerequisite to suit."); *A've v. Serv. Emps. Int'l Union*, 24 F. App'x 326, 329–30 (6th Cir. 2001) (holding plaintiffs could not coattail on an EEOC charge where the individual who filed the charge did not bring a Title VII claim in court within 90 days of receiving a right-to-sue letter).

Even if Ms. Odle's charge were valid, her claims plainly do not arise from the "same facts" as those of the putative Region 14 class members.  Even a cursory review of Ms. Odle's 1999 EEOC charge demonstrates that plaintiffs' claims here are not in any way encompassed by, or even related to, those alleged by Ms. Odle.  *See* Ex. 12.  Ms. Odle's EEOC charge, which relates only to her employment at two *Sam's Club* stores in Texas and Oklahoma, does not contain a single allegation relevant to Region 14, discrimination in pay, or, for that matter, to Wal-Mart.  *Id.* (alleging discrimination in promotions and terminations only).  Therefore, the

---

[9]  Plaintiffs do not identify Ms. Odle by name, but instead reference the "earliest EEOC charge filed by a former national class member."  Wal-Mart believes this to be Stephanie Odle. Compl. ¶ 5 ("The class membership period begins on December 26, 1998, 300 days prior to the earliest class EEOC charge by a former class member."); Ex. 5, *Dukes* Third Am. Compl. ¶ 97 (alleging that Ms. Odle's EEOC complaint was filed on or about October 22, 1999, or 300 days after December 26, 1998).

claims of any class members who rely exclusively on Ms. Odle's charge must be dismissed.[10]

**D.      The Proposed Classes Violate Title VII's Particularized Venue Requirement.**

Even if plaintiffs' proposed classes could be maintained, they should consist only of those individuals who meet Title VII's venue requirements.  Title VII plaintiffs may pursue their claims only in certain districts.  42 U.S.C. § 2000e-5(f)(3); *Pinson v. Rumsfeld*, 192 F. App'x 811, 816–17 (11th Cir. 2006) (per curium) (affirming dismissal of a lawsuit for improper venue under Title VII and holding that "§ 2000e-5(f)(3) . . . set[s] forth the exclusive venues for Title VII claims").  Under this provision, venue is proper in Wisconsin only if the alleged unlawful employment practice was committed in the State, "the employment records relevant to such practices are maintained and administered" in Wisconsin, or the putative class members would have worked in Wisconsin "but for the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(3).  Plaintiffs allege that the Region 14 subclasses include individuals who worked at stores located outside of Wisconsin.  Compl. ¶ 3 (Region 14 includes "Wal-Mart retail stores located in parts of Wisconsin, Illinois, Indiana, and Michigan").  Because these individuals cannot satisfy Title VII's particularized venue requirement, the claims of non-Wisconsin individuals should be dismissed.

---

[10]  Claims pre-dating August 12, 2000 rely exclusively on Ms. Odle's EEOC charge and, on that ground, must be dismissed.  None of the named plaintiffs filed an EEOC charge until after the Supreme Court decertified the *Dukes* class.  *See* Compl. ¶ 86.  The statute of limitations for the putative class members was tolled *only* as of the commencement of the *Dukes* class action, not the earliest EEOC claim filed by a member of the original class.  *American Pipe*, 414 U.S. at 553.  Therefore, because all putative class members in Region 14 are alleged to have lived in deferral states, the EEOC charges filed by the named plaintiffs are only timely regarding discrimination occurring 300 days prior to the date the *Dukes* complaint was filed.

## IV.    CONCLUSION

For the foregoing reasons, Wal-Mart respectfully requests that the Court dismiss or strike the complaint to the extent it seeks to have the Court resolve claims of persons other than the named plaintiffs.

Date: March 15, 2013                          Respectfully submitted,

                                               _/s/ Theodore J. Boutrous, Jr._
                                              Theodore J. Boutrous, Jr. (*pro hac vice*)
                                              tboutrous@gibsondunn.com
                                              Catherine A. Conway (*pro hac vice*)
                                              cconway@gibsondunn.com
                                              Mark A. Perry (*pro hac vice*)
                                              mperry@gibsondunn.com
                                              GIBSON, DUNN & CRUTCHER LLP
                                              333 South Grand Avenue
                                              Los Angeles, CA 90071-3197
                                              Telephone:    213.229.7000
                                              Facsimile:    213.229.7520

                                              Karl G. Nelson (*pro hac vice*)
                                              knelson@gibsondunn.com
                                              GIBSON, DUNN & CRUTCHER LLP
                                              2100 McKinney Avenue
                                              Suite 1100
                                              Dallas, TX 75201-6912
                                              Telephone:    214.698.3100
                                              Facsimile:    214.571.2900

                                              Thomas C. Ewing
                                              tewing@whdlaw.com
                                              Erik K. Eisenmann
                                              eeisenmann@whdlaw.com
                                              WHYTE HIRSCHBOECK DUDEK S.C.
                                              555 East Wells Street, Suite 1900
                                              Milwaukee, WI 53202-3819
                                              Telephone:    414.273.2100
                                              Facsimile:    414.223.5000

Thomas P. Godar
tgodar@whdlaw.com
WHYTE HIRSCHBOECK DUDEK S.C.
33 East Main Street, Suite 300
P.O. Box 1379
Madison, WI 53701-1379
Telephone:    608.255.4440
Facsimile:     608.258.7138

*Attorneys for Defendant Wal-Mart Stores, Inc.*