UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Sandra Ladik, Penny Perkins,
Jackie Goebel, Marie Coggins,
and Sondra Steeb-Lamb,
individually and on behalf of others
similarly situated,

Case No. 3:13-cv-00123-bbc

Plaintiffs,

v.

Wal-Mart Stores, Inc.

Defendant.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STRIKE CLASS CLAIMS

### INTRODUCTION

Defendant Wal-Mart Stores, Inc.'s Motion to Dismiss or Strike Class Claims is largely premised on a statute of limitations argument that is outdated and unpersuasive. Because of its recent success in Texas and Tennessee, however, Wal-Mart asks this Court to set aside logic, merely follow suit and grant its motion. There are two fundamental problems with this position that necessitate denial of Wal-Mart's motion: (1) recent United States Supreme Court authority suggests that the authority on which the Texas and Tennessee courts[1] relied is no longer good law; and (2) unlike the Fifth and Sixth Circuits, the Seventh Circuit has *not* foreclosed the possibility of an absent class member

[1] All exhibits cited herein are attached to the Affidavit of Matthew H. Morgan ("Morgan Aff.") and filed contemporaneously with this memorandum.

1

in one class action benefiting from <u>American Pipe</u> tolling in a subsequent class action involving similar claims.

The United States Supreme Court decisions in <u>Smith v. Bayer Corp.</u>, 131 S. Ct. 2368 (2011) and <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 130 S. Ct. 1431 (2010), have established a trend that allows class action lawsuits like the one Plaintiffs have filed to proceed past the motion to dismiss stage. In <u>Smith,</u> the Court held that absent class members are not bound by a court's denial of class certification and reversed a district court injunction barring an absent class member's successive class action. In <u>Shady Grove</u>, the Court held that only Rule 23 of the Federal Rules of Civil Procedure—and not any other law or policy—controls whether an individual may pursue her claims as a class action. Wal-Mart's timeliness arguments are not well-founded and should be rejected—particularly in this Circuit where there is no binding precedent dictating a result.

Wal-Mart's motion should also be denied because the class allegations in Plaintiffs' Complaint are substantially refined and narrowly focused as compared to the class allegations underlying the complaint in <u>Dukes v. Wal-Mart Stores, Inc.</u> In <u>Dukes,</u> the Supreme Court issued refined standards for certifying class claims, yet acknowledged that in certain circumstances "giving discretion to lower-level supervisors *can be* the basis of Title VII liability under a disparate impact theory." <u>Wal-Mart Stores, Inc. v. Dukes,</u> 131 S. Ct. 2541, 2554 (2011) (emphasis added). Plaintiffs have taken the Supreme Court at its word, and their Complaint conforms to the Supreme Court's refined standards. Indeed, this case is not about forty-one different Wal-Mart regions; it is about

one. And Plaintiffs' allegations stem from a discrete group of managers who made, and were responsible for, the employment decisions in question within this region. Plaintiffs, moreover, have provided new evidence of discrimination by core decision-makers and identified actionable employment practices affecting Region 14 members. At this stage, Plaintiffs must only allege class claims that *may* be subject to certification following a more developed record. Plaintiffs have met this burden.

In addition to the legal prohibitions against granting Wal-Mart's motion, the practical implications also support denial. The original <u>Dukes v. Wal-Mart Stores, Inc.</u>, case began more than a decade ago, and for most of that time the putative class members' statutes of limitation were tolled. After the Supreme Court's June 20, 2011 decision, these women were given a relatively short window of time to file their own individual Charge of Discrimination with the EEOC. Although attempts were made to reach all putative class members, approximately 2,000 charges out of a possible one and a half million were filed on behalf of current and former employees. And of those 2000 charges, only about 70 of these women worked in Region 14.

Nonetheless, Defendant's view is that every woman who was part of the original <u>Dukes</u> class should lose her ability to pursue a claim against Wal-Mart if she did not know about the Supreme Court's decision and the subsequent Northern District of California decision establishing charge filing deadlines, and file a charge. This Court can and should prevent such inequity. Equally concerning is that Defendant's request, if granted, would result in the filing of approximately 70 individual cases in federal courts within Region 14. Because Defendant's request would not only highly prejudice

3

thousands of women, but flood the courts with individual cases, Defendant's motion should be denied.

## FACTUAL AND PROCEDURAL HISTORY

On February 21, 2013, Named Plaintiffs Sandra Ladik, Penny Perkins, Jackie Goebel, Marie Coggins and Sondra Steeb-Lamb filed a complaint alleging discrimination against women who have worked at one or more Wal-Mart stores within the region Wal-Mart defines as Region 14, covering parts of Wisconsin, Michigan, Indiana and Illinois (hereinafter "Region 14"). (ECF No. 1 at ¶ 3.) Each Named Plaintiff worked for Wal-Mart during the period from December 26, 1998 to the present. (Id. at ¶¶ 10-14.) Named Plaintiff Jackie Goebel is a current Wal-Mart employee. (Id. at ¶ 12.)

Plaintiffs filed this case after the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011). Over ten years ago, the Dukes national class action was commenced against Wal-Mart Stores, Inc., the largest retailer in the world and the largest private employer in the United States. (ECF No. 1 at ¶ 1.) In 2004, the District Court for the Northern District of California first certified a nationwide class of female retail sales employees challenging retail store pay and promotion policies and practices that arose on or after December 26, 1998. Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 188 (N.D. Cal. 2004). On interlocutory appeal, the Ninth Circuit Court of Appeals affirmed in significant part the district court's class order. Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 577 (9th Cir. 2010) (en banc). Then, on June 20, 2011, the Supreme Court reversed the Ninth Circuit's certification ruling. Dukes, 131 S. Ct. at 2561.

4

Following the Supreme Court's decision, the Northern District of California issued an order temporarily extending the tolling period awarded to former class members under Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974).  See Morgan Aff. Ex. 1. (Order Extending Tolling, Aug. 19, 2011)  The district court permitted former class members to benefit from American Pipe tolling if they filed charges of discrimination with the EEOC on or before January 27, 2012, in non-deferral states, and on or before May 25, 2012, in deferral states.  Id.

Plaintiffs would have been absent class members in the national class had the Supreme Court upheld the lower courts' certification rulings.  Plaintiffs each timely filed EEOC charges pursuant to the district court's 2012 deadlines.  (ECF No. 1 at ¶ 86.)

## ARGUMENT

### I.    STANDARD OF REVIEW.

The Federal Rules of Civil Procedure disfavor dismissals for failure to state a claim.  Gray v. County of Dane, 854 F.2d 179, 182 (7th Cir. 1988).  Dismissal is only appropriate in limited circumstances, specifically where "it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations." Ledford v. Sullivan, 105 F.3d 354 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences in favor of the plaintiff and accept as true all well-pleaded allegations in the complaint.  See Appert v. Morgan Stanley Dean Witter, Inc., 673 F.3d 609, 622 (7th Cir. 2012); Gibson v. City of Chicago,

5

910 F.2d 1510, 1520-21 (7th Cir. 1990) (stating that "[t]he purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case.") (quotations and citation omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Appert</u>, 673 F.3d at 622 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). Plaintiffs have met their burden and request that this Court deny Defendant's motion.

## II.   PLAINTIFFS' CLASS ALLEGATIONS ARE TIMELY.

Wal-Mart first argues that Plaintiffs' class allegations are untimely and class members' claims in a successive class action cannot be tolled after class certification has been denied in a previous class case. The Court should reject this argument as it ignores pertinent Supreme Court case law, including <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u> and <u>Smith v. Bayer Corp.</u>, which effectively overrule the cases on which Wal-Mart relies. Binding Seventh Circuit precedent has already recognized the import of <u>Shady Grove</u> and <u>Smith v. Bayer</u>, and further supports the application of tolling here. And finally, tolling should be extended to members of the Region 14 putative class to avoid extreme prejudice and promote judicial efficiency.

## A. Supreme Court Case Law Has Long Supported the Tolling of Class Claims.

The Supreme Court has twice squarely addressed the tolling rights class members acquire after class certification is denied. See Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974); Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983). In American Pipe, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class," and further explained that absent class members may intervene in an individual action following the denial of class certification. 414 U.S. at 554. The Supreme Court clarified this holding in Crown, Cork, and permitted tolling where plaintiffs filed a new action. 462 U.S. at 353-54. Accordingly, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." Id. at 354. Because the plaintiff in Crown, Cork filed a new individual action after certification was denied in a prior class action, the Court did not have to specifically address the question of whether class members who retain tolling rights as individuals may combine their claims in a subsequent class action, thereby leaving this question open. Id. 347-48.

Allowing the absent class members in this case to benefit from tolling is consistent with the principles outlined by the Supreme Court in American Pipe and Crown, Cork. Wal-Mart's interpretation of these cases—that members of a second class action are categorically barred from relying on tolling where a previous court denied certification—

is far too rigid. See Phipps, et al. v. Wal-Mart Stores, Inc., --- F. Supp. 2d ---, 2013 WL 752152, at *26 ("[a]s a policy matter, applying the *Andrews [v. Orr]* rule here and in the future cases could undermine the principles that animated *American Pipe* and *Crown, Cork* or, at least, strip plaintiffs of their ability to pursue an otherwise viable subclass action without filing a protective lawsuit.").

### B. Recent Supreme Court Decisions Clarify the Court's Position on Tolling.

Not only is Wal-Mart's interpretation of American Pipe and Crown, Cork mistaken, but it also runs afoul of two very recent Supreme Court decisions that directly influence this issue. In Shady Grove, the Court held that only Rule 23 – and not any other law or policy – controls whether an individual may pursue his or her claims as a class action. 130 S. Ct. 1431 (2010). And in Smith v. Bayer Corp., the Court held that absent class members are not bound by a court's denial of class certification, and consequently reversed a district court's injunction barring an absent class member's successive class action. 131 S. Ct. 2368 (2011). Citing the longstanding bar against nonparty preclusion, the Court held that one court's denial of class certification cannot bar absent class members from pursuing the same claims in a second class action. Id. at 2379-80, 2382.

### 1. Under Shady Grove, Rule 23 is the ultimate source of authority regarding whether a litigant may pursue claims on a class basis.

In Shady Grove, which notably post-dates most of Wal-Mart's referenced case law, the Supreme Court was asked whether a New York law prohibiting class actions regarding certain types of claims could prevent a federal court from applying Rule 23 to

certify a class action involving state law claims.  The Court concluded that the New York Rules of Civil Procedure could not preclude a federal court sitting in diversity from applying Rule 23, explaining that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."  <u>Shady Grove</u>, 130 S. Ct. at 1437.  The Court went on to state that Rule 23 "provides a one-size-fits-all formula for deciding" whether a plaintiff can maintain a class action.  <u>Id.</u>

Wal-Mart will likely argue that <u>Shady Grove</u> is inapposite because the Court did not specifically hold that <u>American Pipe</u> tolling preserved absent parties' claims in follow-on class actions.  But the strength of such an argument is highly suspect in light of the recent circuit and district court decisions that have recognized a sea change in the law due, in part, to <u>Shady Grove</u>.  <u>See, e.g., Sawyer v. Atlas Heating & Sheeting Metal Works, Inc.</u>, 642 F.3d 560, 564 (7th Cir. 2011) (the view that "Rule 23 must be set aside when a suit's timeliness depends on a tolling rule . . . cannot be reconciled with the Supreme Court's . . . decision in <i>Shady Grove Orthopedic Associates</i> which holds that Rule 23 applies to **all** federal civil suits, even if that prevents achieving some other objection that a court thinks valuable.") (emphasis added); <u>Hershey v. ExxonMobil Oil Corp</u>, 278 F.R.D. 617, 621-22 (D. Kan. 2011) (rejecting the view that only successive individual lawsuits were protected in light of <u>Shady Grove</u>); <u>In re Toys "R" Us – Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.</u>, MDL 08-01980 MMM, 2010 WL 5071073, at *15-16 (C.D. Cal. Aug. 17, 2010) (recognizing tolling for successive class action that were more narrow than the initial nationwide class action).  To illustrate, the court in <u>Hershey</u> held as follows:

9

> [T]he court finds that more recent, and more persuasive, decisions have supported the application of class action tolling to subsequent class actions, rejecting the view that the doctrine only protects successive individual lawsuits.
>
> …
>
> This conceptual approach is similarly reflected in the recent decision by the Supreme Court in <u>Shady Grove</u> . . ., where the court held that Rule 23 'creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.' Rule 23 thus 'provides a one-size-fits-all formula for deciding the class-action question.'

278 F.R.D. at 621-22 (citations omitted).   Although the Tennessee court in <u>Phipps</u> dismissed the case due to Sixth Circuit precedent, it recognized the need to revisit the tolling question in light of <u>Shady Grove</u>.   See <u>Phipps</u>, 2013 WL 752152, at *4, 25 (recognizing the impact of <u>Shady Grove</u> is "at least debatable" and stating "in light of more recent jurisprudential trends, the court believes that [the controlling circuit decision] merits reconsideration – or at least refinement – to permit follow-on subclass actions to benefit from *American Pipe* tolling under appropriate circumstances, such as those presented here.").   In the absence of binding Seventh Circuit precedent, this Court should extend tolling in light of the <u>Shady Grove</u> decision.

### 2. <u>Smith v. Bayer</u> likewise supports the application of <u>American Pipe</u> tolling in Plaintiffs' successive class action.

The Supreme Court's recent decision <u>Smith v. Bayer</u> further clarified the Court's position on tolling in successive class actions.   Plaintiff McCollins originally filed a class action lawsuit in a West Virginia state court.   The case was removed to federal court, and then transferred to the District of Minnesota pursuant to a pre-existing Multi-District

Litigation order. 131 S. Ct. at 2373. One month later, Plaintiff Smith filed a separate suit in West Virginia state court asserting similar class claims to those asserted by Plaintiff McCollins. Id. Unlike the McCollins case, however, the Smith case could not be removed because there were multiple West Virginia defendants that defeated complete diversity. Id. Class certification was denied in McCollins and the defendants then sought injunctive relief in Smith to prevent the court from certifying a class. Id. at 2374.

On appeal, the Supreme Court had to decide whether "the federal court's rejection of McCollins' proposed class precluded a later adjudication in state court of Smith's certification motion." Id. at 2376. The Court ultimately held that Smith was not a "party" to the McCollins suit as it relates to preclusion, because a putative class member is not a party before certification of the class. Id. at 2379-80. Ultimately, the Court held that "neither a proposed class action nor a rejected class action may bind nonparties." Id. at 2380. The Court further explained in a footnote that tolling of a limitations period was one way that a person not party to a class suit may receive certain benefits of the class. Id. at 2830, n. 10.

The Supreme Court also flatly rejected Wal-Mart's argument in this case relating to potential abuse of the class action device. Specifically, the Court dismissed the defendant's concern relating to "serial relegation of class certification" and explained that "principles of *stare decisis* and comity among courts" would "mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." Id. at 2381. The Phipps court echoed a similar sentiment, stating that "this court is satisfied that the plaintiffs here are not attempting to 'abuse' the availability of *American Pipe* tolling.

11

Instead, the plaintiffs seek a definitive determination as to whether their proposed geographic subclass, in which this court sits, presents a viable basis for a class action lawsuit." <u>Phipps</u>, 2013 WL 752152, at *30.

Wal-Mart will also likely argue that <u>Smith</u> does not speak beyond the Anti-Injunction Act's relitigation exception. This narrow interpretation cannot be reconciled, however, with recent case law, including two United States Supreme Court cases. <u>See, e.g.</u>, <u>Thorogood v. Sears, Roebuck & Co.</u>, 131 S. Ct. 3060 (Mem) (2011) (vacating and remanding <u>Thorogood</u> for further consideration in light of <u>Smith v. Bayer</u>); <u>Amgen Inc. v. Conn. Ret. Plans and Trust Funds</u>, 133 S. Ct. 1184, 1201 (citing <u>Smith</u>, the Court explained that "if certification is denied for failure to prove materiality, nonnamed class members would not be bound by that determination"). And several courts, including the Seventh Circuit, have permitted members of a first, unsuccessful class action to pursue a follow-up class action, rather than unfairly being barred by the previous action. <u>See</u> <u>Smentek v. Dart</u>, 683 F.3d 373, 377 (7th Cir. 2012) ("The rule urged by the defendants in this case that the denial of class certification bars the certification of the same or a similar class in a suit by a member of the same class as the previous suit might do the trick, but it would contradict the holding of *Smith v. Bayer Corp.,* which is that a class member who did not become a party to the previous parallel class action is not precluded from seeking class certification in his class action."); <u>Thorogood v. Sears, Roebuck & Co.</u> 678 F.3d 546, 551-52 (7th Cir. 2012) (holding that class members who never become parties could not be enjoined from bringing a copycat class action); <u>City Select Auto Sales, Inc. v. David Randall Assocs., Inc.</u>, CIV.A. 11-2658 JBS, 2012 WL 426267, at *3-

4 (D.N.J. Feb. 7, 2012); <u>Mitchell v. Acosta Sales, LLC</u>, 841 F. Supp. 2d 1105, 1116-17 (C.D. Cal. 2011) (holding that plaintiffs' attempt to seek conditional collective certification was not precluded by previous actions, noting that "[n]either a proposed, nor a rejected, class action may bind nonparties" based on <u>Bayer</u>); <u>Thompson v. Northstar Cos.</u>, No. 10CV1044-BTM (JMA), at *2 (S.D. Cal. Sept. 7, 2011) (holding that the plaintiff could not be precluded from pursuing his class claims based on a prior case where certification was denied); <u>Brown v. Am. Airlines, Inc.</u>, 285 F.R.D. 546, 552-53 (C.D. Cal. Aug. 29, 2011) (court refused to apply collateral estoppel to bar plaintiffs from seeking class certification). Most recently, the district court in <u>Phipps</u> acknowledged the application of <u>American Pipe</u> tolling to subsequent class actions, explaining that "more recent cases have found that *American Pipe* tolling **can and should** extend to subsequent class actions under appropriate circumstances." 2013 WL 752152, at *22 (emphasis added).

Read together, <u>Shady Grove</u> and <u>Smith</u> change the law regarding tolling in successive class actions and effectively overrule previous circuit court decisions. Several courts have recognized the impact these cases have on the tolling analysis in successive class actions. <u>See, e.g.</u>, <u>Sawyer</u>, 642 F.3d at 564; <u>Villanueva v. Davis Bancorp, Inc.</u>, No. 09-C-7826, 2011 U.S. Dist. Lexis 103473, at *7-8 (N.D. Ill. Sept. 13, 2011) ("the way in which courts analyze successive class action suits brought under *Federal Rule of Civil Procedure Rule 23* is evolving"). Wal-Mart's position simply cannot be reconciled with <u>Smith</u> or <u>Shady Grove</u>.

This case presents the Court with a unique opportunity to adopt this recent trend

and reject Defendant's now-invalid arguments on timeliness.  Indeed, courts in other circuits do not have guidance regarding the impact of <u>Shady Grove</u> and <u>Smith.</u>  Here, however, the Seventh Circuit has issued such guidance.  Given <u>Sawyer</u> and <u>Thorogood,</u> there should be no doubt that this Court should recognize the shift in law, not defer the issue.  Plaintiffs urge this Court to seize this opportunity and allow Plaintiffs' class action allegations, as pled, to proceed.

### C. Unlike the Fifth and Sixth Circuits, the Seventh Circuit Has Not Explicitly Prohibited Tolling in Successive Class Actions.

Even assuming *arguendo* that <u>Shady Grove</u> and <u>Smith</u> do not overrule previous circuit court law on the tolling issue, the Court should still deny Wal-Mart's motion.[2] Indeed, the Court's hands are not tied in this case, as the Seventh Circuit has not foreclosed the possibility of a putative class member in a class action benefitting from <u>American Pipe</u> tolling in a subsequent class case.  Rather, recent Seventh Circuit case law supports Plaintiffs' position.  In <u>Sawyer v. Atlas Heating & Sheet Metal Works, Inc.</u>, the court addressed whether a named plaintiff was precluded from bringing a subsequent state class action after the initial named plaintiff voluntarily dismissed the suit before any

---

[2] Wal-Mart cites <u>Gabelli v. S.E.C.</u>, 133 S. Ct. 1216 (2013), in support of its assertion that Plaintiffs' claims are untimely.  This case is not persuasive.  In <u>Gabelli</u>, the SEC sought civil penalties from defendants pursuant to the Investment Advisers Act.  Defendants moved to dismiss the claims alleging that they were time barred.  <u>Id.</u> at 1220.  The Court explained that "[t]his case *centers around* the meaning of 28 U.S.C. § 2462."  <u>Id.</u> (emphasis added).  In other words, the Court had to decide whether the statute of limitations specific to 28 U.S.C. § 2462 commenced when the alleged fraud occurred or when plaintiffs first discovered the cause of action.  The Court ultimately ruled in favor of the defendants, holding that the "discovery rule" did not apply.  <u>Id.</u> at 1224.  In doing so, the Court explained that the government "is a different kind of plaintiff" who "seeks a different kind of relief."  <u>Id.</u> at 1223.  <u>Gabelli</u> has no application to this case.

certification decisions were made. 642 F.3d at 561. The court ultimately held that the second class action was not precluded because the original named plaintiff dismissed its suit before the state judge could decide whether to certify a class. Id. at 564-65.

Wal-Mart attempts to minimize Sawyer by drawing factual distinctions. But Wal-Mart misses the point. Plaintiffs are not claiming Sawyer's relevance to this case rests on factual similarities. Sawyer is persuasive because of the Seventh Circuit's acknowledgment that Shady Grove has changed the landscape on American Pipe tolling. Id. at 563-64. Indeed, Judge Easterbrook referenced the Eleventh Circuit's decision in Griffin v. Singletary, 17 F.3d 356 (11th Cir. 1994)—one of the cases cited by Wal-Mart that categorically bars successive class actions from proceeding. Id. at 564. And, ultimately, the Seventh Circuit concluded that "[t]o the extent that the Eleventh Circuit may believe that Rule 23 must be set aside when a suit's timeliness depends on a tolling rule, that view cannot be reconciled with the Supreme Court's later decision in *Shady Grove*…". Id. at 564. In essence, the Seventh Circuit recognizes, as this Court should, the effect of Shady Grove on previous circuit court cases addressing tolling in successive class actions. That recognition mandates that Wal-Mart's timeliness arguments be rejected.[3]

### D. Failure to Extend Tolling Will Severely Prejudice Putative Class Members and Result in the Filing of Many Identical Individual Actions.

The most troubling part of Wal-Mart's motion is the adverse impact it would have,

---

[3] To the extent that Wal-Mart relies on In re Copper Antitrust Litig., 300 F. Supp. 2d 805 (W.D. Wis. 2003), Plaintiffs respectfully submit that the case has been modified (and to the extent it directly conflicts, nullified) by Shady Grove and Smith.

if granted, on the putative class members who did not file charges with the EEOC. If tolling is not extended to those who are unaware of the Supreme Court's June 2011 decision and did not file a charge within the short window of time provided, their claims will be extinguished altogether.

To illustrate the severity of this situation, the initial putative class in the <u>Dukes</u> matter contained roughly one and a half million women. <u>Dukes</u>, 131 S. Ct. at 2546. Within the six-month and eleven-month charge filing deadlines established, Plaintiffs' counsel connected with, and filed charges on behalf of, only approximately 2,000 of those women. Morgan Aff. at ¶ 3. Roughly 70 of the women worked at a Wal-Mart store in Region 14. <u>Id.</u> If Wal-Mart's motion is granted, thousands of women will lose their claims. This Court can and should prevent such injustice. Indeed, the prejudice to these putative class members far outweighs any prejudice to Wal-Mart associated with litigating this case to the class certification stage.

Prohibiting tolling would not only negatively impact putative class members in this case, but also in future cases. <u>See</u> <u>Phipps</u>, 2013 WL 752152, at *29 (stating "if *American Pipe* tolling does not apply to follow-on class actions, defendants (and the named plaintiffs) could effectively strip the putative class members of their ability to pursue class relief by settling before the court ruled on the merits of a proposed class at some point after the statute of limitations had otherwise run."). And dismissing Plaintiff's class claims as untimely would be patently unfair as compared to the California plaintiffs in <u>Dukes</u>, who have retained the right to pursue their regional class claims beyond the motion to dismiss stage. <u>Id.</u> at 27 ("In this court's view, stripping

these plaintiffs of the ability to pursue subclass relief *ab initio* is unfair relative to the *Dukes* plaintiffs and reflects a result not dictated by *American Pipe* or *Crown, Cork*.").

If Wal-Mart's motion is granted, the federal courts in Wisconsin, Illinois, Indiana and Michigan will be inundated with individual actions that contain the same underlying theories of relief—many of which will reference conduct dating back to 1998.  There is no question that public policy and judicial efficiency concerns support the extension of tolling in this case.

For the reasons stated above, Plaintiffs' class allegations are timely.  Wal-Mart's motion should be denied.

## III.   PLAINTIFFS SET FORTH PLAUSIBLE CLAIMS APPROPRIATE FOR CLASS-WIDE RELIEF.

"As a general rule, whether a suit can be maintained as a class or collective action is determined not on a Rule 12(b)(6) motion, but on a motion to certify a class action under Rule 23...".  Dominguez v. Micro Center Sales Corp., No. 11 C 8202, 2012 WL 1719793, at *2 (N.D. Ill. May 15, 2012).  Since Dukes, courts have rejected similar premature efforts to dismiss class claims, where, as here, most of the factual issues pivotal to certification are disputed and discovery has not yet commenced.  See, e.g., Kassman v. KPMH LLP, No. 11 Civ. 3743 (JMF), 2013 WL 452913, at *7 (S.D.N.Y. Feb. 7, 2013) (denying defendant's motion to dismiss explaining that "the relevant question is not, as it was in *Dukes*, whether Plaintiffs have 'prove[d] that they are *in fact* sufficiently numerous parties, common question of law or fact, etc.' for the purposes of Rule 23" since plaintiffs were at the motion to dismiss stage) (internal citation omitted);

17

Barghout v. Bayer Healthcare Pharm., No. 11-cv-1576 (DMC)(DAD), 2012 WL 1113973, at *11 (D. N.J. Mar. 30, 2012) (denying defendant's motion to dismiss, noting that the applicability of the reasoning in Dukes is "tenuous a[t] this stage of the litigation"); Howell v. Rush Copley Med. Grp. NFP, No. 11 C 2689, 2012 WL 832830, at *3 (N.D. Ill. Mar. 12, 2012) (in a Title VII action, the court denied defendant's motion to dismiss where plaintiffs had not yet moved for class certification and had only recently completed discovery); Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950 (LBS)(JCF), 2012 WL 205875 (S.D.N.Y. Jan. 19, 2012), report and recommendation adopted in relevant part, 877 F. Supp. 2d 113, 118-119 (Jul. 17, 2012) (denying defendant's motion to strike in Title VII case, after concluding that plaintiffs may be able to establish commonality upon further discovery); Calibuso v. Bank of Am. Corp., No 10-CV-1413 (JFB) (ETB), 2012 WL 4458404, at *15-16 (E.D.N.Y. Sept. 27, 2012) (denying defendant's motion to dismiss, noting that "*Dukes* did not foreclose all class action claims where there is a level of discretion afforded to individual managers and supervisors"). Plaintiffs have set forth allegations sufficient to plead a Title VII class action. This Court should not dismiss or strike Plaintiffs' class allegations.

### A. Plaintiffs' Class Allegations Comply With the Standard Set Forth By the Supreme Court in Dukes.

Wal-Mart's commonality arguments completely ignore the more refined and narrowly focused allegations underlying Plaintiffs' Complaint. Like the other successive class actions evolving from the original Dukes case, Plaintiffs addressed the Supreme

Court's concerns.[4] For example, Plaintiffs' class allegations focus on *one* Wal-Mart region, as opposed to the forty-one regions identified in the original Dukes matter. And Plaintiffs' allegations stem from a discrete group of managers who made, and were responsible for, the employment decisions in question within this region. Plaintiffs have also provided new evidence of discrimination by core decision-makers and identified actionable employment practices affecting region members. Through discovery, Plaintiffs believe that these refined disparate treatment and disparate impact claims can ultimately satisfy the Rule 23 commonality requirement. Plaintiffs have therefore satisfied their burden at this stage.

### 1. Plaintiffs' set forth disparate treatment claims that could satisfy commonality.

In Dukes, the Supreme Court acknowledged that class claims may indeed challenge discretionary decision-making where Plaintiffs identify a "common mode of exercising discretion," such as through "significant proof" of "a general policy of discrimination." Dukes, 131 S. Ct. at 2553-55. Wal-Mart's allegations to the contrary are at odds with the Court's decision. To be sure, the Supreme Court reaffirmed that under Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977), a plaintiff may establish liability by showing that "discrimination was the company's standard operating procedure [,] the regular rather than the unusual practice." Dukes, 131 S. Ct. at 2552 n.7

---

[4] The Tennessee court recognized certain differences in the successive Region 43 class action, stating "[w]ere it not for the *American Pipe* tolling issue, the court would address the viability of [the region] class allegations . . . and would be disinclined to dismiss those allegations without class discovery and the benefit of a fully briefed Rule 23 motion supported by material evidence." Phipps, 2013 WL 752152, at *4

(quoting _Teamsters_, 431 U.S. at 358). The Court's decision therefore permits Plaintiffs to pursue certification of classes that, with the benefit of a developed record, will rest on "significant proof" of a "general policy of discrimination," extended by a discrete group of managers within considerably refined classes. See _id._ at 2553.

Plaintiffs' complaint alleges class claims consistent with the Supreme Court's new guidance, and contains more than adequate factual allegations to provide Wal-Mart fair notice of the class claims alleged:

(1) **Refined Class.** In _Dukes_, the Court noted that it was "one of the most expansive class actions ever" (131 S. Ct. at 2546) and went on to fault plaintiffs for representing 1.5 million women, spread across 41 regions. The Court seemed to suggest "that the sheer size of the class and the vast number and diffusion of challenged employment decisions was key to the commonality decision." _Chen-Oster_, 877 F. Supp. at 119. Here, Plaintiffs allege claims on behalf of classes of present and former female Wal-Mart retail store employees who have been subjected to gender discrimination as a result of specific policies and practices in _one_ region. Within Region 14, the decisions at issue were made, reviewed, and approved by a core group of mangers, including the Regional Vice President, who had the final approval regarding pay and promotion decisions.

(2) **Core Group of Decision-Makers.** Another reason the Supreme Court rejected nationwide certification was because Plaintiffs had not "identified a common mode of exercising discretion that pervades the entire company." _Dukes_, 131 S. Ct. at 2554-55. The Court clarified that to satisfy commonality, Plaintiffs' "claims must

depend upon a common contention– for example, the assertion of discriminatory bias on the part of the same supervisor." Id. at 2551.   Plaintiffs have now focused their allegations on a group of managers in Region 14 who were ultimately responsible for the alleged discriminatory decisions in question.

(3) **New Evidence of Discriminatory Conduct.**   Plaintiffs' complaint also sets forth specific allegations of gender bias by Region 14 managers, which could support a pattern or practice claim:

- *Evidence that Wal-Mart Managers Rely on Discriminatory Stereotypes.* At a meeting of all Wal-Mart's District Managers, Wal-Mart then-CEO Thomas Coughlin told the District Managers that they were the key to running the stores: "you are the culture."  The key to success was described as "single focus to get the job done . . . women tend to be better at information processing.  Men are better at focus single objective [sic]." The District Managers were instructed to create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders." (ECF No. 1 at ¶ 77.)  All Wal-Mart Store Managers, including Store Managers from Region 14, have been required to attend training programs at the company's Walton Institute.  These managers were advised at the Institute that the reason there are few female managers at Wal-Mart is because men were "more aggressive in achieving those levels of responsibility" than women. Managers were cautioned that efforts to promote women could lead to the selection of less qualified women over more qualified men.  (ECF No. 1 at ¶ 78.)

- *Evidence of Pay Discrimination in Region 14.*  On information and belief, Wal-Mart management continues to rely on discriminatory stereotypes and bias views about women when making pay decisions in Region 14.  For example, one proposed class member stated that her manager explained that the reason for the disparity between her pay and her male counterpart's pay was due to Wal-Mart's "philosophy" that men were paid more because they were heads of household and they had families to support. (ECF No. 1 at ¶ 79(c).)

- *Evidence of Promotion Discrimination in Region 14.*  On information and belief, Wal-Mart management continues to rely on discriminatory stereotypes and biased views about women when making promotion

decisions in Region 14. For example, one proposed class member was told by the Personnel Manager she was "not management material" and was rejected for the MIT Program. Notably, this proposed class member had worked for Wal-Mart on and off from approximately 1975 until about 2008. (ECF No. 1 at ¶ 79(a).) Further, multiple female employees complained of unwarranted coaching and progressive discipline after showing interest in a promotion through the Career Preferences System and/or inquiring into the possibility of a promotion. Such coachings served to provide a pretext for disqualifying these women from the promotions they sought. (ECF No. 1 at ¶ 54(c).)

Plaintiffs further alleged that Wal-Mart promoted this bias against Region 14 women and ignored reports of discrimination against female employees. (See ECF No. 1 at ¶¶ 64-73, 79.) And Wal-Mart had no meaningful policies or practices to hold managers accountable—financially or otherwise—to equal employment and diversity policies and goals. (ECF No. 1 at ¶ 80.)

**(4) Plaintiffs Allege Common Questions.** There are questions of law and fact common to the proposed class. These questions predominate over individual questions. Such questions include, without limitation, the following: (1) whether Defendant, through its Region 14 managers with final authority to make the challenged decisions, has engaged in a pattern or practice of discrimination in pay and management track promotions against its female employees in Region 14; (2) whether Defendant, through its nationwide policies, including but not limited to, the Relocation Policy, Career Preferences Program, Pay Cap Policy, and Scheduling and Attendance Policies, as implemented and utilized by Region 14 management, has engaged in a pattern or practice of discrimination in pay and management track promotions against its female employees in Region 14; (3) whether Defendant's nationwide policies, including but not limited to

22

the Relocation Policy, Career Preference Policy, Pay Cap Policy, and Scheduling and Attendance Policies, as implemented and utilized by Region 14 management have had an adverse impact on the proposed class and if so whether this impact can be justified by business necessity; (4) whether there are statistical patterns adverse to female employees in pay and management track promotions in Region 14; (5) whether Defendant was aware of the impact of their nationwide policies and practices on its women employees; and (6) whether relief and punitive damages relief for the proposed classes are warranted.

Whether Plaintiffs can ultimately satisfy Rule 23's commonality requirement depends on factual issues that can only be determined through further discovery.

### 2. Plaintiffs also set forth disparate impact claims that could satisfy commonality.

In <u>Dukes</u>, the Supreme Court concluded that the class could not satisfy the commonality requirement of Rule 23, which "requires the plaintiff to demonstrate that the class members have suffered the same injury." 131 S. Ct. at 2551. Notably, the Supreme Court did not close the door on the possibility of certifying a class premised on a policy of giving discretion to lower-level supervisors. The Court stated that " 'in appropriate cases,' giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate impact theory—since 'an employer's undisciplined system of subjective decision-making [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.'" <u>Dukes</u>, 131 S. Ct. at 2554 (quoting <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 990–91 (1988)).

Numerous post-<u>Dukes</u> courts, including the Seventh Circuit, have recognized that

discretionary decision-making may be made on a class-wide basis where plaintiffs identify a "common mode" of exercising discretion.  See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 490-92 (7th Cir. 2012) (ultimately reversing the district court's denial of class certification, concluding that plaintiffs' claims were proper for classwide adjudication even though defendant's policies permitted discretion on the part of the brokers); Kassman v. KPMH LLP, No. 11 Civ. 3743 (JMF), 2013 WL 452913, at *6 (S.D.N.Y. Feb. 7, 2013) ("Significantly…the Court did not close the door altogether on the possibility of certifying a class based on a policy of giving discretion to lower-level supervisors."); Ellis v. Costco Wholesale Corp., 285 F.R.D. 492, at *518 (N.D. Cal. Sept. 25, 2012) (stating that "[e]ven under Dukes, the fact that some degree of discretion is exercised among managers does not in and of itself preclude class certification"); Calibuso v. Bank of Am. Corp., No. 10-CV-1413 (JFB)(ETB), 2012 WL 4458404, at *15 (E.D.N.Y. Sept. 27, 2012) (acknowledging that Dukes "did not foreclose all class action claims where there is a level of discretion afforded to individual managers and supervisors"); Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 118 (S.D.N.Y. July 17, 2012) (denying defendants' motion to strike claims, noting while an individual manager's decision might involve discretion, that this, "as the Supreme Court made clear in Dukes, does not doom a class").

In McReynolds, the Seventh Circuit decided whether plaintiffs' allegations that employer's policies had a disparate impact on hundreds of African-American Merrill Lynch brokers was appropriate for classwide treatment.  672 F.3d 482.  Plaintiffs challenged two company-wide practices in particular, as having a disparate impact on

African-American employees. The first related to defendant's "teaming" policy, which permitted brokers to choose teams that "share clients, and the aim in forming or joining a team is to gain access to additional clients, or if one is already rich in clients to share some of them with brokers who have complementary skills that will secure the clients' loyalty and maybe persuade them to invest more with Merrill Lynch." Id. at 488. Additionally, the plaintiffs challenged Merrill Lynch's account distribution policy, which is a transfer of customer accounts when a broker leaves the company. Id. at 488-89. Accounts are transferred within a given branch office, and the brokers within that specific branch compete for the accounts. Id. at 489. Because African-American brokers were less likely to gain admission to good teams, it followed that they were also less likely to be in a position to win the account distribution competitions. Id. at 489-90. The Seventh Circuit ultimately reversed the district court's denial of class certification, concluding that plaintiffs' claims were proper for classwide adjudication even though defendant's policies permitted discretion on the part of the brokers. The court set forth a very helpful hypothetical:

> Suppose a police department authorizes each police officer to select an officer junior to him to be his partner. And suppose it turns out that male police officers never select female officers as their partners and white officers never select black officers as their partners. There would be no intentional discrimination at the departmental level, *but the practice of allowing police officers to choose their partners could be challenged as enabling sexual and racial discrimination*—as having in the jargon of discrimination law a 'disparate impact' on a protected group—and if a discriminatory effect was proved, then to avoid an adverse judgment the department would have to prove that the policy was essential to the department's mission. 42 U.S.C. § 2000e–2(k)(1)(A)(i); *Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2672–73, 174 L.Ed.2d 490 (2009); *Bryant v. City of Chicago,* 200 F.3d 1092, 1098–99 (7th Cir.2000). That case would

25

not be controlled by *Wal–Mart* (although there is an undoubted resemblance), in which employment decisions were delegated to local managers; it would be an employment decision by top management.

Id. at 489 (emphasis added).

Here, Wal-Mart corporate management (analogous to the police department) authorizes Region 14 managers (analogous to the police officer) to select employees subordinate to them to join them on the management team and/or management track. Plaintiffs are alleging that male managers avoid selecting female managers founded on the discriminatory stereotypes engrained by corporation management. The practice and overall process of allowing managers to choose junior employees to join them on the management team is tainted. Plaintiffs have provided evidence not only that this exercise of discretion is guided by common policies at the corporate level, but that Wal-Mart breeds a corporate culture that favors men over women in leadership roles.

Consistent with <u>McReynolds</u>, Plaintiffs' disparate impact claims may satisfy commonality.

## IV.   THE SINGLE FILING RULE APPLIES.

Wal-Mart contends that absent class members cannot rely on Plaintiffs' timely EEOC charges to exhaust their administrative remedies.[5] This argument is not persuasive and should be rejected both because the Seventh Circuit has applied the single-filing rule to Title VII cases and because the only authority Wal-Mart cites for this proposition

---

[5] Plaintiffs have each timely filed EEOC charges, upon which the putative class may rely. (<u>See</u> ECF No. 1 at ¶ 86.) All named Plaintiffs' charges extend back to the beginning of the class period of December 26, 1998 under <u>American Pipe</u> tolling. <u>See</u> II.A-D <u>supra</u>.

neither addresses Rule 23 class actions nor mentions the single filing rule's application to successive Rule 23 class actions.

"The single-filing rule generally provides that a plaintiff who did not file a charge of discrimination with the EEOC may either join a class action or intervene in a lawsuit brought by someone else who did file a timely charge with the EEOC that arises out of the same or similar allegedly discriminatory conduct." Thomas v. Waukesha County, No. 10-C-0449, 2012 WL 2155302, at *3 (E.D. Wis. June 13, 2012) (citing Horton v. Jackson County Bd. of County Comm'rs, 343 F.3d 897, 899 (7th Cir. 2003)). Putative class members may benefit from this rule if their "claim arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which he wants to intervene…". Horton, 343 F.3d at 899.

The single-filing rule applies to the putative class members here because, contrary to Wal-Mart's assertion, each member of the putative class asserts substantially related claims of region-wide gender discrimination arising out of the same time frame as Plaintiffs' charges. Plaintiffs were absent class members in the Dukes litigation, received American Pipe tolling of their individual claims back to December 26, 1998, and timely filed their charges of discrimination with the EEOC alleging gender discrimination on a class-wide basis throughout Region 14. Additionally, each putative class member's claims are substantially related to Plaintiffs' claims, as all seek to remedy region-wide gender discrimination with respect to pay and promotions.

Applying the single-filing rule here is also consistent with the rule's purpose of putting the defendant on notice and facilitating conciliation. See Horton, 343 F.3d at 899

27

(the primary purpose of exhausting administrative remedies in a Title VII case "is to place the employer on notice of an impending suit that he can try to head off by negotiation with the complainant, utilizing the conciliation services offered by the EEOC.") (citation omitted).  Wal-Mart simply cannot argue it was not on notice of the claims pled in this case.  See, e.g., Phipps, 2013 WL 752152 at *27 (explaining that "because the initial *Dukes* lawsuit concerned a nationwide class, Wal-Mart was on notice that each Region within that nationwide class was potentially subject to the *Dukes* action").  And Wal-Mart had ample opportunity to conciliate and resolve these claims during the past decade.  Wal-Mart's failure to do so infers that renewed efforts to conciliate class or individual claims would be futile and create an unnecessary burden on the parties and the EEOC. See Horton, 343 F.3d at 900.  Indeed, Wal-Mart's contention that each putative class member must file her own charge directly contravenes the purposes of American Pipe tolling and the single-filing doctrines, would "frustrate the principal function of the class suit," American Pipe, 414 U.S. at 551, and render Rule 23's opt-out procedure a nullity. Cf. Crown, 462 U.S. at 351 (Rule 23 and tolling rule of American Pipe were designed to avoid "a needless multiplicity of actions" and cannot be interpreted to render Rule 23's opt-out procedure meaningless).

Moreover, the case law Defendant cites is inapposite.  Three of the four cases relied on by Defendant do not even involve or relate to class actions.  See Gatto v. Indian Prairie Sch. Dist. 204, No. 12-1815, 2013 WL 563287, at *2 (7th Cir. Feb. 15, 2013) (affirming dismissal of employee's Title VII claims where plaintiff waited more than five years after resigning to file a charge with the EEOC); Alam v. Miller Brewing Co., 709

F.3d 662 (7th Cir. Feb. 27, 2013) (concluding that district court properly dismissed plaintiff's individual Title VII claim where he did not name Miller Brewing as an employer in his EEOC charge); Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 550 (7th Cir. 2002) (affirming district court's grant of summary judgment in favor of employer, where individual plaintiff's second charge for retaliation was not "like or reasonably related" to his first charge for discrimination among other things).  And the fourth case, Robinson v. Sheriff of Cook County, 167 F.3d 1155 (7th Cir. 1999), is not helpful because an individual named plaintiff was disqualified to serve as a *class representative* after she failed to file a charge with the EEOC.  Id. at 1156.  Here, all named Plaintiffs have filed timely charges with the EEOC.  Notably, the Robinson court explained to Plaintiffs' point that "once a Title VII class action is up and running the class members are not required to inundate the EEOC with what amount to meaningless requests for right to sue letters."  Id. at 1158.

The non-binding case law from other circuits is likewise distinguishable.  See Ruehl v. Viacom, 500 F.3d 375, 387, 390 n.19 (3d Cir. 2007) (the court held that the single-filing rule did not apply in individual actions after decertification of *an ADEA collective action*, but expressed "no opinion" on its applicability to a Rule 23 action) (emphasis added); Andrews v. Orr, 851 F.2d 146 (does not address administrative exhaustion requirements under Title VII).  Defendant's arguments should be rejected; the single-filing rule applies here.

## V.   ONLY NAMED PLAINTIFFS NEED TO SATISFY THE TITLE VII VENUE RULE.

Finally, Wal-Mart asserts that even if this case is allowed to proceed on a class basis, the class should only consist of individuals who worked at Wisconsin Wal-Mart stores due to purported venue concerns.  (ECF No. 17 at 26.)  This argument is simply not credible.  Not only does it completely ignore pertinent case law, but it attempts to immunize Wal-Mart's corporate regions—all of which extend across state lines—from regional class action litigation.  To be clear, although plaintiffs are bringing Title VII claims on behalf of themselves and others similarly situated,  "[t]he law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives."  Ring v. Roto-Rooter Servs. Co., 1:10-CV-179, 2010 WL 3825390, at *4 (S.D. Ohio Sept. 28, 2010) (quoting Cook v. UBS Fin. Servs. Inc., No. 05 Civ. 8842, 2006 WL 760285, at *6, n.2 (S.D.N.Y. Mar 21, 2006); Turnley v. Bank of Am. Inv. Servs. Inc., 576 F. Supp. 2d 204, 212 (D. Mass. 2008) (same).

Wal-Mart's request that the Court ignore relevant authority based solely on Pinson v. Rumsfeld, 192 F. App'x 811, 816-17 (11th Cir. 2006), a non-binding case involving individual, not class, claims is simply a last ditch effort to dispose of a portion of the proposed class in this case.  Defendant's hyperextended arguments regarding the alleged failure to comply with Title VII venue requirements should be rejected.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court deny Wal-Mart's motion in its entirety.

Dated: April 5, 2013

**NICHOLS KASTER, PLLP**

s/Matthew H. Morgan
James H. Kaster (WI #1001474, MN #53946)
    kaster@nka.com
Matthew H. Morgan (MN #304657)
    morgan@nka.com
Megan I. Brennan (MN #0386550)
    mbrennan@nka.com
Katherine M. Vander Pol (MN #0390036)
    vanderpol@nka.com
Kate A. Fisher (MN #0392180)
    kfisher@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone:  (612) 256-3200
Fax:  (612) 338-4878

**COHEN MILSTEIN SELLERS & TOLL**

Joseph M. Sellers (*pro hac vice*)
    jsellers@cohenmilstein.com
Christine E. Webber (*pro hac vice*)
    cwebber@cohenmilstein.com
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  (202) 408-4600
Fax:  (202) 408-4699

ATTORNEYS FOR PLAINTIFFS AND THE
PROPOSED RULE 23 CLASS

31