**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

SANDRA LADIK, PENNY PERKINS,
JACKIE GOEBEL, MARIE COGGINS,
and SONDRA STEEB-LAMB, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

                                        Case No. 3:13-cv-00123-bbc

v.

WAL-MART STORES, INC.,

      Defendant.

---

**REPLY IN SUPPORT OF WAL-MART STORES, INC.'S**
**MOTION TO DISMISS OR STRIKE CLASS CLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    Introduction ........................................................................................................... 1

II.   Argument ............................................................................................................... 1

      A.    Plaintiffs' Class Allegations Are Untimely .............................................. 1

            1.    No Court Has Extended *American Pipe* Tolling In The
                  Circumstances Presented Here................................................... 2

            2.    *Shady Grove* And *Smith* Do Not Alter This Consensus. ............ 4

            3.    Application Of The Statute Of Limitations Here Is Not Unfair ................ 8

      B.    Plaintiffs' Class Allegations Cannot Satisfy Rule 23 As A Matter Of Law......... 10

      C.    The Claims of Absent Class Members Who Have Not Satisfied The EEOC
            Charge Filing Requirement Must Be Dismissed ................................................. 15

III.  Conclusion .......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .................................................................. 11

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)............................................................. 2, 6, 10, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................ 11

*Bolden v. Walsh Constr. Co.*,
   688 F.3d 893 (7th Cir. 2012) ....................................................... 11, 12, 13

*Burnett v. N.Y. Cent. R.R. Co.*,
   380 U.S. 424 (1965)................................................................................. 7

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
   No. 11-2658 JBS, 2012 WL 426267 (D.N.J. Feb. 7, 2012)...................... 3

*Copper Mkt. Antitrust Litig.*,
   300 F. Supp. 2d 805 (W.D. Wis. 2003) .................................................. 2

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983).......................................................................... 2, 10

*Del. State Coll. v. Ricks*,
   449 U.S. 250 (1980)................................................................................. 9

*Dukes v. Wal-Mart Stores, Inc.*,
   131 S. Ct. 2541 (2011)................................................................... passim

*Dukes v. Wal-Mart Stores, Inc.*,
   No. C 01-2252 CRB, 2012 WL 6115536 (N.D. Cal. Dec. 10, 2012)........ 4

*Gabelli v. S.E.C.*,
   133 S. Ct. 1216 (2013)..................................................................... 1, 2, 9

*Guar. Trust Co. v. York*,
   326 U.S. 99 (1945)................................................................................... 5

*Hershey v. Exxon Mobil Oil Corp.*,
   278 F.R.D. 617 (D. Kan. 2011) ........................................................................ 3

*Hipp v. Liberty Nat'l Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) .................................................................. 15, 16

*In re Countrywide Fin. Mort. Lending Practices Litig.*,
   708 F.3d 704 (6th Cir. 2013) ........................................................................ 11

*In re Toys "R" Us - Del., Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   MDL 08-01980 MMM(FMOx), 2010 WL 5071073 (C.D. Cal. Aug. 17, 2010) ...................... 3

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   702 F.3d 364 (7th Cir. 2012) ........................................................................ 11

*Ledbetter v. Goodyear Tire & Rubber Co.*,
   550 U.S. 618 (2007) .................................................................................. 8

*McLelland v. Deluxe Fin. Servs., Inc.*,
   431 F. App'x 718 (10th Cir. 2011) .................................................................. 15

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   672 F.3d 482 (7th Cir. 2012) .................................................................. 12, 13

*Mohasco Corp. v. Silver*,
   447 U.S. 807 (1980) .................................................................................. 8

*Montana v. United States*,
   440 U.S. 147 (1979) .................................................................................. 7

*Odle v. Wal-Mart Stores, Inc.*,
   No. 3:11-cv-2954-O, 2012 WL 5292957 (N.D. Tex. Oct. 15, 2012) ........................... 4, 6

*Order of R.R. Telegraphers. v. Ry. Express Agency, Inc.*,
   321 U.S. 342 (1944) .................................................................................. 7

*Phipps v. Wal-Mart Stores, Inc.*,
   No. 3:12-cv-1009, 2013 WL 752152 (M.D. Tenn. Feb. 20, 2013) ............................. 4, 7

*Rotella v. Wood*,
   528 U.S. 549 (2000) .................................................................................. 9

*Ruehl v. Viacom*,
   500 F.3d 375 (3d Cir. 2007) ......................................................................... 16

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
   642 F.3d 560 (7th Cir. 2011) ...................................................................... 1, 3

*Shady Grove Orthopedic Assocs., P.A. v Allstate Insurance Co.*,
130 S. Ct. 1431 (2010) ............................................................................ 1, 5

*Smentek v. Dart*,
683 F.3d 373 (7th Cir. 2012) ............................................................................ 6

*Smith v. Bayer Corp.*,
131 S. Ct. 2368 (2011) ............................................................................ 1, 5, 6

*Southwire Co. v. J.P. Morgan Chase & Co.*,
307 F. Supp. 2d 1046 (W.D. Wis. 2004) ............................................................ 6

*Thorogood v. Sears, Roebuck & Co.*,
131 S. Ct. 3060 (2011) ............................................................................ 6

**Statutes**

28 U.S.C. § 2072(b) ............................................................................ 5, 16

42 U.S.C. § 2000e-5(e)(1) ............................................................................ 8

## I.    INTRODUCTION

Plaintiffs do not deny that their class claims are untimely under the "anti-stacking" rule adopted by every court of appeals to have considered the issue, nor do they dispute that the Seventh Circuit has held that there is "no conflict" between those cases and this Circuit's law. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011).  Thus, to deny Wal-Mart's motion to dismiss the class claims, this Court would have to be the first to judicially extend a statutory limitations period in this context, even though the Supreme Court has just reiterated that such policy decisions are for the legislature, not the courts.  *See Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1224 (2013).  Moreover, even if the class claims were timely, they are barred by the Supreme Court's ruling in *Dukes v. Wal-Mart Stores, Inc.*, 131 S. Ct. 2541 (2011), which held that substantively identical claims failed the commonality requirement of Rule 23(a).  The absent claimants also concededly failed to comply with the charge-filing and venue requirements of Title VII.  Adherence to the law laid down by Congress, the Supreme Court, and the Seventh Circuit requires dismissal of the class claims.

## II.    ARGUMENT

### A.    Plaintiffs' Class Allegations Are Untimely.

Plaintiffs do not dispute that absent the operation of a tolling doctrine, the claims of every member of the putative class are barred by the limitations period that Congress included in Title VII.  Nevertheless, without citing a single decision that has allowed tolling of class claims under the circumstances of this case, plaintiffs argue that "in the absence of binding Seventh Circuit precedent," this Court should "seize this [unique] opportunity" to judicially "*extend* tolling in light of" *Shady Grove Orthopedic Associates, P.A. v Allstate Insurance Co.*, 130 S. Ct. 1431 (2010), and *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011).  Opp'n 10, 13–14 (emphasis added).

The Supreme Court itself, however, has very recently warned courts not to engage in the quintessentially legislative task of adjusting limitations periods.  *Gabelli*, 133 S. Ct. at 1224. And even if the Court *could* do what plaintiffs ask, it *should* not do so.

### 1. No Court Has Extended *American Pipe* Tolling In The Circumstances Presented Here.

As plaintiffs concede, the Supreme Court has never even hinted that the tolling doctrine announced in *American Pipe* and clarified in *Crown Cork* may be applied in subsequent *class*— as opposed to *individual*—actions.  Opp'n 7.  In those decisions, the Court struck a careful balance between the policies of repose served by statutes of limitations and efficiency under Rule 23, holding that the individual claims of putative class members may benefit from tolling during an initial class action.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).  Although this Court has recognized that "*Crown, Cork & Seal* sets the outer limits of the *American Pipe* doctrine" (*Copper Mkt. Antitrust Litig.*, 300 F. Supp. 2d 805, 812 (W.D. Wis. 2003)), plaintiffs now ask it to go much further and allow endless rounds of class litigation regardless of the timeliness of such claims.  This would upset the balance struck in *American Pipe*, and contravene the fundamental principle that "the cases in which a statute of limitation may be suspended by causes not mentioned in the statute itself . . . are very limited in character, and are to be admitted with great caution."  *Gabelli*, 133 S. Ct. at 1224 (internal quotation marks omitted; alteration in original); *see also Crown Cork*, 462 U.S. at 354 (Powell, J., concurring) ("the tolling rule in class actions is a generous one, inviting abuse").[1]

---

[1]  Plaintiffs try to distinguish *Gabelli* as involving a governmental plaintiff (Opp'n 14 n.2), but it is pertinent here not because of the particular statute of limitations it addressed, but because it reflects the Supreme Court's refusal to intrude on the legislature's judgment in establishing and adjusting appropriate periods of limitations and repose.  Plaintiffs are inviting error by

Indeed, every court of appeals to consider the issue has ruled that tolling may not extend to a subsequent class action when, as here, the first class failed for lack of commonality. *See* Wal-Mart Br. 5 (collecting cases). The Seventh Circuit canvassed these anti-stacking cases recently, and expressly determined that there is "no conflict" between the rule of those cases— the rule on which Wal-Mart's motion is based—and this Circuit's precedent. *Sawyer*, 642 F.3d at 563. In doing so, the Court explained that where, as here, a class fails due to lack of commonality, class claims are not tolled under *American Pipe*. *Id.* at 564.[2] Likewise, none of the out-of-circuit district court cases cited by the plaintiffs would extend *American Pipe* tolling when the initial class action failed on commonality grounds. *See City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11-2658 JBS, 2012 WL 426267, at *2, *3 (D.N.J. Feb. 7, 2012) (allowing tolling only because "[n]o motion for class certification was ever filed" in the first action); *Hershey v. ExxonMobil Oil Corp.*, 278 F.R.D. 617, 621–22 (D. Kan. 2011) (noting in dicta that members of a class action received *American Pipe* tolling from an earlier class action that had not yet reached the class certification stage); *In re Toys "R" Us - Del., Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*, MDL 08-01980 MMM(FMOx), 2010 WL 5071073, at *6 (C.D. Cal. Aug. 17, 2010) (not applying tolling of any kind, but simply discussing in dicta).

---

asking this Court to do exactly the same thing—judicially extend a statutory limitations period—that the *Gabelli* Court unanimously disapproved.

[2] Plaintiffs concede that *Sawyer* is factually distinguishable from this case. *See* Opp'n 15. They also admit that there is "no binding precedent [in this Circuit] dictating [the] result" they seek on tolling. *Id.* at 2. They are thus asking this Court to reach a result that conflicts with the rule adopted in every court of appeals to have considered it and applied in at least two preceding cases that, like this one, splintered off from the failed nationwide *Dukes* class.

## 2.     *Shady Grove* And *Smith* Do Not Alter This Consensus.

Against this wall of precedent, plaintiffs assert only that the Seventh Circuit "has not foreclosed the possibility" of *American Pipe* tolling for subsequent class actions.  Opp'n 1–2.  They argue that this Court should disregard the well-established authority governing here because two Supreme Court cases addressing federalism and issue preclusion "suggest" a "trend" to the contrary.  Opp'n 1–2.  They are wrong.

First and foremost, plaintiffs ignore the clear trend actually relevant to this suit:  former *Dukes* class members, represented by plaintiffs' own counsel, have advanced the same strained arguments about the import of *Shady Grove* and *Smith* on numerous occasions, and these arguments have been rejected before every court to hear them.  *See Odle v. Wal-Mart Stores, Inc.*, No. 3:11-cv-2954-O, 2012 WL 5292957, at *9, *11 (N.D. Tex. Oct. 15, 2012) (dismissing materially identical class claims because they "do not benefit from *American Pipe* tolling [and] are barred by the statute of limitations"); *Phipps v. Wal-Mart Stores, Inc.*, No. 3:12-cv-1009, 2013 WL 752152, at *25 (M.D. Tenn. Feb. 20, 2013) ("this court does not find that either or both cases implicitly overruled *Andrews* [*v. Orr*, 851 F.2d 146 (6th Cir. 1988)]"); *Dukes v. Wal-Mart Stores, Inc*., No. C 01-2252 CRB, 2012 WL 6115536, at *3 n.1 (N.D. Cal. Dec. 10, 2012) ("[T]he issues decided in [*Shady Grove* and *Smith*] are sufficiently distinct from [the tolling issues] presented here that little can be reliably inferred from their holdings.").  Notably, the *Odle* plaintiffs petitioned the Fifth Circuit for interlocutory review of the dismissal order, advancing identical arguments to those made here, but on March 19, 2013, the Fifth Circuit summarily denied review.  *See* Ex. 1 to Declaration of Karl G. Nelson ("Nelson Decl."), filed

concurrently herewith.  Thus the very principles of *stare decisis* and comity trumpeted by plaintiffs, Opp'n 11, dictate dismissal of plaintiffs' class claims as time-barred.[3]

Moreover, the *only* mention of tolling in either *Shady Grove* or *Smith* is in a footnote in *Smith* in which the Supreme Court *confirms* the established rule of *American Pipe*—"a putative member of an uncertified class may wait until after the court rules on the certification motion *to file an individual claim* or move to intervene in the suit."  *Smith*, 131 S. Ct. at 2379 n.10 (emphasis added).  This clear statement leaves no room for misinterpretation: the Supreme Court understands *American Pipe* tolling to apply only to individual claims.  It directly supports Wal-Mart's position in this motion and destroys any suggestion that *Smith* requires reexamination of the anti-stacking cases.  It is undoubtedly for that reason that plaintiffs studiously ignore this clear Supreme Court statement on the subject of this motion, even though Wal-Mart has repeatedly pointed it out in this and other cases.  The approach proposed by plaintiffs, in other words, contradicts the very authority—*Smith*—that they erroneously invoke to justify it.

*Shady Grove* stands for the proposition that whether class claims can be certified in diversity cases is governed solely by Rule 23, not state law. 130 S. Ct. at 1437.  It does not follow from Rule 23's precedence over state procedural laws that Rule 23 overcomes the *substantive* statutes of limitations contained in Title VII.  *See Guar. Trust Co. v. York*, 326 U.S. 99, 109–10 (1945) (holding that while a federal court sitting in diversity may ignore state procedural law, it may not similarly ignore state statutes of limitations); 28 U.S.C. § 2072(b). Under any reading of *Shady Grove*, a plaintiff's ability to bring class claims is always subject to the substantive requirements of a cause of action, including statutes of limitations and the

---

[3] While the *Phipps* court expressed some policy-based disagreement with the anti-stacking rule, Opp'n 8, 10, 16, that court expressly rejected plaintiffs' argument that either *Shady Grove* or *Smith* required the extension of tolling that plaintiffs seek here.

corresponding limits placed on judicial tolling doctrines, because these limits on tolling "do[] not substantively restrict class actions or the relief available" but "simply restrict[] the timing of when plaintiffs may pursue those claims." *Odle*, 2012 WL 5292957, at *8.

Likewise, with the exception of footnote 10, *Smith* concerned itself with federalism issues and issue preclusion—not tolling. It held that a district court could not enjoin a state court class action involving similar claims, similar parties, and class-action rules in state court that were similar to, but not the same as, Federal Rule 23. *Smith*, 131 S. Ct. at 2373, 2382. Plaintiffs' discussion of *Smith* revolves entirely around issue preclusion. For example, plaintiffs rely on *Thorogood v. Sears, Roebuck & Co.*, 131 S. Ct. 3060 (Mem) (2011), and *Smentek v. Dart*, 683 F.3d 373, 377 (7th Cir. 2012), Opp'n 12—but these cases simply apply *Smith*'s issue preclusion holding to timely class claims and thus do not address tolling or the statute of limitations at all. *See also* Opp'n 10–13 (discussing other preclusion cases). *But Wal-Mart is not asking this Court to preclude any claims*.

Instead, Wal-Mart is following clear authority dictating that the statute of limitations on the claims of those who failed to take any action on their own behalf following the decertification of the *Dukes* class has now expired. *See* Wal-Mart Br. 1 ("Plaintiffs' class claims are barred by Title VII's statute of limitations."), *id.* at 4–5 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 307 F. Supp. 2d 1046 (W.D. Wis. 2004)). The *Dukes* plaintiffs filed their first class action complaint in June 2001. Almost a decade later, the Supreme Court unanimously reversed certification of the *Dukes* class, thereby ending the tolling applicable to claims of absent class members under *American Pipe*/*Crown Cork*. *See American Pipe*, 414 U.S. at 553. On remand, the Northern District of California generously extended this tolling, giving those former putative class members who had not yet exhausted their administrative remedies until May 2012

(in deferral states) to file an individual charge with the EEOC.  Compl. ¶ 86.  When that deadline passed, anyone who did not act on behalf of her own rights became time-barred.  The dismissal of those claims results from the simple operation of Title VII's limitations period (as generously extended by *American Pipe* tolling and the Northern District of California's order).  It has nothing to do with issue preclusion.

While timeliness and claim preclusion both serve similar interests in judicial economy, the two doctrines also serve additional, distinct goals, and thus each provides a separate and independent hurdle to the consideration of the merits of a claim.  *Compare Montana v. United States*, 440 U.S. 147, 153–54 (1979) (issue preclusion "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate" and "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions"), *with Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (statutes of limitations serve important functions of notice and repose:  "'The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" (quoting *Order of R.R. Telegraphers. v. Ry. Express Agency, Inc.*, 321 U.S. 342, 349 (1944)); *see also Phipps*, 2013 WL 752152, at *26 ("neither [*Shady Grove* nor *Smith*] addressed whether countervailing considerations of judicial economy or repose would justify different rules with respect to the extension of *American Pipe* tolling to follow-on class actions").  Because plaintiffs' class claims must be dismissed as untimely, issue preclusion is entirely irrelevant here.

### 3.     Application Of The Statute Of Limitations Here Is Not Unfair.

Lacking any support in the case law, plaintiffs' plea for a judicial extension of the limitations period ultimately rests on the argument that the current bounds of *American Pipe* tolling will unfairly foreclose claims of "those who are unaware of the Supreme Court's June 2011 decision and did not file [an EEOC] charge."  Opp'n 16.  But 12 years after the *Dukes* plaintiffs first asserted claims on behalf of these same proposed class members, this is precisely the result that Title VII's statute of limitations and administrative exhaustion requirements compel.

Plaintiffs complain that "women were given [only] a relatively short window of time to file their own individual Charge of Discrimination with the EEOC," Opp'n 3, but Congress itself afforded Title VII plaintiffs only 300 days to assert their claims in deferral states, 42 U.S.C. § 2000e-5(e)(1).  The Supreme Court has repeatedly explained that this "relatively short window of time," "reflects Congress' strong preference for the prompt resolution of employment discrimination allegations through voluntary conciliation and cooperation."   *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 630–31 (2007), *superseded on other grounds by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5–6; *Mohasco Corp. v. Silver*, 447 U.S. 807, 825–26 (1980) ("By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination. . . . It is not our place simply to alter the balance struck by Congress in procedural statutes by favoring one side or the other in matters of statutory construction.").  Not only have the individual Wal-Mart employees in Region 14 received the full benefit of those 300 days, but they also received over a decade of tolling during the pendency of the *Dukes* class action, *and* an additional 300 days awarded by the *Dukes* district court judge to prevent any

"injustice."  Compl. ¶ 86.  Plaintiffs request for *more* accommodation is entirely unwarranted, and contrary to the repose Congress intended.  Indeed, plaintiffs' proposed rule is "'beyond any limit that Congress could have contemplated' and 'would . . . thwart[ ] the basic objective of repose underlying the very notion of a limitations period.'"  *Gabelli*, 133 S. Ct. at 1223 (quoting *Rotella v. Wood*, 528 U.S. 549, 554 (2000)); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980) (Title VII's limitations provisions "protect employers from the burden of defending claims arising from employment decisions that are long past").

Moreover, plaintiffs' concern for those "unaware of the Supreme Court's June 2011 decision" is unconvincing at best.  *See* Opp'n 16.  The *American Pipe* doctrine rests on the notion that the filing of a class action complaint puts every putative class member on notice that she need not pursue an individual action.  By parity of reasoning, a judicial order denying class certification puts every putative class member on notice that she must pursue an individual action.  The *Dukes* class action was among the most heavily publicized in the history of Title VII class action litigation, as was the landmark Supreme Court decision, which received media coverage through every major news outlet.  In addition, plaintiffs' attorneys admit that they attempted to "reach all putative class members."  Opp'n 16.  In so doing, they stressed the importance of the charge-filing requirement for all putative plaintiffs and advertised the filing deadlines on their website.  Nelson Decl., Ex. 2, Wal-Mart Class Website, http://walmartclass.com/public_home.html (filed in *Dukes v. Wal-Mart Stores, Inc*. No. 01-2252-CRB (N.D. Cal.) on January 16, 2012) ("If you believe you may have been harmed by the discriminatory practices alleged in this case, you must act to protect your rights before the time to pursue your claim expires.").  Every member of the formerly (but erroneously) certified *Dukes*

class has had more than ample time to pursue her own claims.  Those who failed to do so are time-barred.  That is how statutes of limitations work.[4]

Accordingly, plaintiffs' brazen argument that this Court has "a unique opportunity" to be the first to extend *American Pipe* tolling where no court has gone before, Opp'n 3–14, should be rejected.  That doctrine was *not* created for the purpose of protecting a putative class member who has merely slept on her rights.  *Crown Cork*, 462 U.S. at 352 ("Limitations periods are intended . . . to prevent plaintiffs from sleeping on their rights.").  Each individual putative plaintiff in Region 14 has been afforded well over a decade to protect her own interests. Plaintiffs complain that "only about 70" female Wal-Mart employees chose to do so by filing EEOC charges in Region 14 within the more than generous time allotted.  Opp'n 16.  But the most logical inference that can be drawn from this fact is that the rest failed to file charges, not because they were unaware of the deadlines for doing so, but because they did not believe that they had any actionable claims of discrimination against Wal-Mart.

## B.    Plaintiffs' Class Allegations Cannot Satisfy Rule 23 As A Matter Of Law.

Plaintiffs have provided no reason that their insufficient class allegations satisfy the Rule 23 standards articulated in *Dukes* and their class claims should be dismissed at the pleading stage.  Contrary to the straw man set up in plaintiffs' opposition, Wal-Mart does not assert that plaintiffs must *prove* they satisfy the Rule 23 criteria at this stage.  *See* Opp'n 17.  Rather, Wal-Mart moves to dismiss because plaintiffs fail to even *allege* that their claim for classwide relief

---

[4] To the extent plaintiffs argue that they have "substantially refined" their class allegations since *Dukes* such that their class "allegations stem from a discrete group of managers who made, and were responsible for, the employment decisions in question within [Region 14]," Opp'n 2–3, then they are not entitled to tolling at all.  *American Pipe*, 414 U.S. at 770 (Blackmun, J., concurring) (explaining that tolled claims must "concern the same evidence, memories, and witnesses as the subject matter of the original suit").

fits within Rule 23's well-defined commonality criterion or is in any material sense distinguishable from the legal theory rejected in *Dukes*.

In asking for discovery on those infirm class claims, plaintiffs fall back on the same "'no set of facts' pleading standard" that "the Supreme Court expressly 'retired'" in *Twombly*. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010); *compare Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007), *with* Opp'n 5. Under the proper standard, plaintiffs' class "complaint *must be* dismissed" if they fail to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570 (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard applies not only to individual claims, but to class claims as well. *See* Wal-Mart Br. 13.

It is the clear law of this Circuit that commonality cannot be satisfied when plaintiffs seek to challenge a system of delegated discretion across multiple offices and supervisors. In *Bolden v. Walsh Construction Co.*, the Seventh Circuit relied on *Dukes* in reversing certification of two classes of construction workers who sought to challenge discrimination at hundreds of different construction sites. 688 F.3d 893 (7th Cir. 2012). It held that "when multiple managers exercise independent discretion, conditions at different stores (or sites) do not present a common question." *Id.* at 896; *see also In re Countrywide Fin. Mort. Lending Practices Litig.*, 708 F.3d 704, 709 (6th Cir. 2013) (explaining that the policy of delegating discretion to local managers is "legally insufficient" to support commonality under *Dukes*). Just four months later, the court again emphasized that if "local managers discriminated against employees on a forbidden ground . . . the existence of discrimination would have to be proved case by case" and therefore commonality is missing. *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 369 (7th Cir. 2012) (discussing *Dukes*, 131 S.Ct. 2541); *see also Gschwind v. Heiden*, 692 F.3d 844,

848 (7th Cir. 2012) (Posner, J.) (citing *Dukes*, 131 S. Ct. 2541) ("[A]n employer's policy of granting its supervisors discretion to make personnel decisions can't be the subject of a class action against the employer by employees complaining of discrimination by the supervisors.").

Plaintiffs simply ignore these cases. Instead, their argument relies almost exclusively on their interpretation of *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, which summarized its holding thusly: "if employment discrimination is practiced by the employing company's local managers, exercising discretion granted them by top management . . . rather than implementing a uniform policy established by top management to govern the local managers, . . . the incidents of discrimination complained of do not present a common issue." 672 F.3d 482, 488 (7th Cir. 2012). The court carefully distinguished the company-wide practice at issue in *McReynolds* from the allegations of "discretion by local managers" presented here and in *Dukes*. 672 F.3d at 490; *see* Compl. ¶¶ 49, 56, 58, 59, 74, 88. *McReynolds* allowed certification of a disparate impact class challenging the defendant's "national policy allowing brokers to form and distribute commissions within teams" only because this policy was "adopted by top management and applied to all of Merrill Lynch's offices throughout the nation." *Bolden*, 688 F.3d at 897–98. *McReynolds* therefore gives no support to plaintiffs' effort to plead a *disparate treatment* class, which requires proof of discriminatory animus by individual managers.

Plaintiffs' failure to allege a uniform policy similarly dooms disparate impact claims. Plaintiffs do not identify *any* uniform employment policy that was applicable throughout Region 14 that could plausibly support a finding of commonality. Instead, plaintiffs admit that they continue to challenge the very same "nationwide policies" rejected in *Dukes*, only now they challenge them "as implemented and utilized" in Region 14. Compl. ¶ 32; Wal-Mart Br. 11.

That runs directly contrary to the Seventh Circuit's post-*Dukes* decisions, which draw a "line that separates a company-wide practice from an exercise of discretion by local managers." *McReynolds*, 672 F.3d at 490.  Plaintiffs' opposition makes clear on which side of this line their complaint falls:  As in *Dukes*, they challenge Wal-Mart's delegation of decisionmaking authority to its managers.  Opp'n 26 ("Here, Wal-Mart corporate management . . . authorizes Region 14 managers . . . to select employees . . . to join them on the management team and/or management track.  Plaintiffs are alleging that male managers avoided selecting female managers founded on the discriminatory stereotypes engrained by corporate management.").

Nor do plaintiffs allege any plausible facts to suggest that any of these "policies" applied to the class in a common way.  Their complaint does not contain a single factual allegation that suggests that any manager above the store level engaged in discriminatory decisions or implementation of any of the challenged policies.  Wal-Mart Br. 17.  Therefore, plaintiffs' class claims, which continue to challenge the "bare existence of delegated discretion," fail as a matter of law.  *Dukes*, 131 S. Ct. at 2444; *see* Ex. 6 to Declaration of Catherine A. Conway, Dkt. No. 19 ("Conway Decl.").  Although plaintiffs try to couch their challenge in the language used by the Seventh Circuit to describe the teaming policy in *McReynolds*, *Dukes* "tells us that local discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity."  *Bolden*, 688 F.3d at 898.

As a last ditch attempt to distinguish this case from *Dukes*, plaintiffs point to the fact that their complaint narrows the class to one of the 41 regions identified in *Dukes*.  Opp'n 19.  But the Supreme Court definitively held that the *Dukes* named plaintiffs could not proceed on behalf of a nationwide class—not because of its size, but because plaintiffs' theory of discrimination was fatally flawed, as a consequence of which they were unable to "establish[] the existence of

*any* common question." *Dukes*, 131 S. Ct. at 2557 (emphasis added).  And while plaintiffs argue that they have followed the Supreme Court's guidance by focusing their "allegations on a [core] *group* of managers in Region 14 who were ultimately responsible for the alleged discriminatory decisions in question," including the Regional Vice President (Opp'n 20–21 (emphasis added)), when the Supreme Court suggested that bias on the part of the "same supervisor" could support commonality, it meant one supervisor, not many.  The plaintiffs do not identify or quantify this group of managers, nor does their complaint include *a single* anecdote or factual allegation even suggesting that any Regional Vice President or, for that matter, District Manager acted in a discriminatory way, let alone that each member of this purportedly core management group did.  Here as in *Dukes*, it is "quite unbelievable that all managers would exercise their discretion in a common way without some common direction."  *Dukes*, 131 S. Ct. at 2555.  Plaintiffs have again failed to identify any common direction.  Thus the fact that this case involves only one region is immaterial.  The class is still unapologetically broad and challenges the decisions of hundreds of managers over a 14-year period.  "Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*."  *Id.* at 2552.  Plaintiffs have alleged no such glue.[5]

---

[5]  Plaintiffs assert that they "allege common questions," Opp'n 22, but they have engaged in the very misreading of that rule that the Supreme Court cautioned them against.  *See Dukes*, 131 S. Ct. at 2551 (noting "Any competently crafted class complaint literally raises common 'questions.' . . . . For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay?") (internal citation omitted).  They have critically *failed* to allege that proceeding as a class will "generate common *answers* to the crucial question *why was I disfavored*."  *Id.* at 2552.

**C.     The Claims of Absent Class Members Who Have Not Satisfied The EEOC Charge Filing Requirement Must Be Dismissed**

The single-filing rule does not apply here and cannot save the claims of absent class members who failed to file EEOC charges.  Plaintiffs do not argue that the facts contained in the named plaintiffs' charges are sufficient to support the claims of absent class members.  Instead, they assert that "each putative class member's claims are substantially related to Plaintiffs' claims, as all seek to remedy *region-wide* gender discrimination with respect to pay and promotions."  *Id.* at 27 (emphasis added).  This is simply not true—the named plaintiffs' EEOC charges do not contain any regional allegations.  *See* Conway Decl., Exs. 7–11, EEOC Charges of Named Plaintiffs.  Rather, these charges include nothing more than conclusory allegations that each was "discriminated against in pay [and/or] promotions because of [her] gender" in their individual stores.  *Id.*  Such boilerplate allegations are insufficient to satisfy the charge filing requirement for an individual plaintiff, let alone to serve as a basis for claims brought on behalf of thousands of individuals.  *See McLelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 731 (10th Cir. 2011) ("An individual may believe—and thus allege—that an employer's treatment of him is part of a 'pattern and practice' of discrimination.  But without specific allegations of class-wide discrimination, such vague claims by individual plaintiffs are not enough to alert a defendant that class claims are on the horizon.  The phrase 'pattern and practice' is not a shibboleth which, once uttered, puts the defendant on alert that the limitations period is tolled.  That would be grossly unfair."); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1226 (11th Cir. 2001) (per curiam) (where "general policies as applied to different individuals in different

15

offices are being challenged," a "single charge cannot be expected to put the EEOC and employer on notice that [such] policies . . . are being challenged indefinitely").[6]

Moreover, plaintiffs do nothing to rebut (nor could they) the fact that the Supreme Court conclusively rejected the suggestion that discrimination arising in *different* Wal-Mart stores arises from the *same* facts.  Wal-Mart Br. 24–5; *Dukes*, 131 S. Ct. at 2557.  Simply put, the rationale for applying coattailing evaporates where, as here, a class has been decertified for lacking commonality, because "dissimilarity frustrates the EEOC's goals of notice and conciliation."  *Ruehl v. Viacom*, 500 F.3d 375, 389 (3d Cir. 2007).[7]

As a result, plaintiffs can only attack Wal-Mart's authority as inapposite because some of the cases cited do not specifically address class actions.  Opp'n 28–29.  But Wal-Mart's authority is directly on point and sets forth the standard by which the sufficiency of an EEOC charge must be measured.  Plaintiffs point to no special, more lenient, charge-filing or coattailing rule applicable only in class actions.  To the contrary, such a special rule would be expressly prohibited by the Rules Enabling Act.  28 U.S.C. § 2072(b) (Rule 23 may not be used to "abridge, enlarge or modify any substantive right.").[8]

---

[6]  Wal-Mart has moved only for the dismissal of class claims here, but reserves the right to raise individual defenses to the named plaintiffs' claims at a later time.

[7]  Plaintiffs seek to distinguish *Ruehl* because it arises under the ADEA rather than Title VII, but the EEOC charge requirements under both statutes are coextensive, and decisions regarding one are applicable to the other.  *See, e.g., Hipp*, 252 F.3d at 1221 n.10; Opp'n 29.

[8]  Even if coattailing were permissible in this case (it is not), the named plaintiffs' charges would be tolled only as of the filing of the *Dukes* class action complaint and at most extend back 300 days to August 12, 2000, Wal-Mart Br. 26 n.10, not December 26, 1998 as plaintiffs assert.  Opp'n 26 n.5; *see also American Pipe*, 414 U.S. at 553 ("*commencement* of the original class suit tolls the running of the statute" (emphasis added)).

## III.   CONCLUSION

For the foregoing reasons, Wal-Mart respectfully requests that plaintiffs' class claims be dismissed or stricken.

Date: April 15, 2013                     Respectfully submitted,

                                  */s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr. (*pro hac vice*)
tboutrous@gibsondunn.com
Catherine A. Conway (*pro hac vice*)
cconway@gibsondunn.com
Mark A. Perry (*pro hac vice*)
mperry@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520

Karl G. Nelson (*pro hac vice*)
knelson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201-6912
Telephone:     214.698.3100
Facsimile:     214.571.2900

Thomas C. Ewing
tewing@whdlaw.com
Erik K. Eisenmann
eeisenmann@whdlaw.com
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
Telephone:     414.273.2100
Facsimile:     414.223.5000

Thomas P. Godar
tgodar@whdlaw.com
WHYTE HIRSCHBOECK DUDEK S.C.
33 East Main Street, Suite 300
P.O. Box 1379
Madison, WI 53701-1379

Telephone:    608.255.4440
Facsimile:    608.258.7138

*Attorneys for Defendant Wal-Mart Stores, Inc.*