IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SANDRA LADIK, JACKIE GOEBEL,
MARIE COGGINS and SONDRA STEEB-LAMB,

                                                                             OPINION and ORDER

                        Plaintiffs,

                                                                             13-cv-123-bbc

     v.

WAL-MART STORES, INC.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Sandra Ladik, Jackie Goebel, Marie Coggins and Sondra Steeb-Lamb are current or former employees in Wisconsin stores owned by defendant Wal-Mart Stores, Inc. Plaintiffs contend that defendant discriminated against them in pay and promotions because of their sex, in violation of Title VII of the Civil Rights Act. In addition, plaintiffs are asserting disparate impact claims.

      Three motions are before the court: (1) defendant's motion for summary judgment, dkt. #59; (2) plaintiff's motion to strike portions of Michael Evert's affidavit and defendant's supplemental proposed findings of fact, dkt. #167; and (3) defendant's motion to sever the cases or hold separate trials, dkt. #125. I am granting defendant's motion for summary judgment because plaintiffs have failed to adduce evidence from which a reasonable jury could find that defendant violated Title VII. Plaintiffs have cited some

statistical disparities between men and women at some of defendant's Wisconsin stores, but it is well-established that statistics alone are not enough to prove a discrimination claim. Baylie v. Federal Reserve Bank of Chicago, 476 F.3d 522, 524 (7th Cir. 2007) ("Statistical analysis is relevant . . . [but] it must be coupled with other evidence, which does most of the work."); Nichols v. Southern Illinois University-Edwardsville, 510 F.3d 772, 782 (7th Cir. 2007) ("[A] plaintiff may use pattern evidence of disparate treatment even if that evidence is not rigorously statistical, although, standing alone, it is insufficient evidence to withstand summary judgment").  Accord Norman-Nunnery v. Madison Area Technical College, 625 F.3d 422, 431 (7th Cir. 2010); Barricks v. Eli Lilly & Co., 481 F.3d 556, 559 (7th Cir. 2007).  Even in the context of a disparate impact claim, the plaintiff must tie a statistical disparity to a particular employment practice.  Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988).  Because plaintiffs have not provided the necessary context for their statistics, they have failed to prove a disparate treatment or disparate impact claim under Title VII.

It was not necessary to consider the Evert affidavit or defendant's supplemental proposed findings of fact in order to reach this conclusion, so I am denying plaintiffs' motion to strike those materials as moot.  The summary judgment decision also renders moot defendant's motion to sever the case or hold separate trials.

OPINION

A. Disparate Treatment

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Although over the years courts have described a variety of "direct" and "indirect" methods for proving a disparate treatment claim under Title VII, the fundamental question has remained the same, which is whether a reasonable jury could find that the employer discriminated against the employee because of a protected characteristic. Bass v. Joliet Public School District No. 86, 746 F.3d 835, 840 (7th Cir. 2014) ("[W]hen all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination."). Accordingly, regardless how the parties have classified particular evidence, I have reviewed the evidence in light of that general standard.

1. Sandra Ladik

Plaintiff Ladik worked at defendant's Portage, Wisconsin store from 1992 until 2003. Her primary claim is that defendant discriminated against her by paying her less than a similarly situated male employee, Mark Deskins. One way to prove a discrimination claim is with evidence that a similarly situated employee in another group received more favorable treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258-59 (1981).

There are no rigid rules in determining whether two employees are similarly situated, but there must be "enough common factors to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." Bates v. City of Chicago, 726 F.3d 951, 955 (7th Cir. 2013) (internal quotations and alterations omitted).

Ladik was a maintenance supervisor at the Portage store at the same time that Deskins was a maintenance supervisor at the Baraboo store. (Although defendant takes issue with plaintiffs' description of Ladik's position as a "maintenance supervisor," defendant does not deny that Ladik and Deskins had similar job responsibilities, so I need not resolve any disputes about job titles.) It is undisputed that Deskins was paid more than Ladik, but neither side proposes any fact about what the difference was.

Oddly, neither side cites specific evidence on the question whether the same person or persons decided Ladik's and Deskins's rate of pay. This is important because different decision makers may rely on different criteria, so the inference of discrimination may be stronger or weaker depending on the decision makers involved. Ellis v. United Parcel Service, Inc., 523 F.3d 823, 826-27 (7th Cir. 2008). Defendant cites plaintiffs' complaint for the proposition that individual store managers have "the initial responsibility to set pay rates," Dft.'s PFOF ¶ L18, dkt. #69, and plaintiffs cite policies stating that pay may be determined by various people, including the store manager, district manager and regional vice president. Plts.' Br., dkt. #114, at 25-26. However, neither side identifies the relevant decision makers in this particular case. Because plaintiffs have the burden of proof, their failure on this issue weakens this claim. NLRB v. Louis A. Weiss Memorial Hospital, 172

F.3d 432, 446 (7th Cir.1999) ("An absence of evidence does not cut in favor of the one who bears the burden of proof on an issue.").

Instead of the relevant decision makers, defendant focuses on the differences between the two stores. The Baraboo store was twice the size of the Portage store and the Baraboo store was open more hours, Plts.' Resp. to Dft.'s PFOF ¶¶ 49-50, dkt. #120, so defendant argues that a maintenance supervisor at the Baraboo store would have more responsibilities and be entitled to commensurate pay. Plaintiffs do not dispute this as a general matter, but they say that the differences between the stores cannot be the real reason for the pay difference because defendant originally offered Deskins a lower wage to take the position at the Baraboo store and defendant increased the pay by more than $1.00 an hour when Deskins turned down the first offer. Plts.' PFOF ¶¶ 115-16, dkt. #122. Although plaintiffs' evidence may suggest that Deskins's pay was based on more than just the difference between the two stores, plaintiffs do not explain how that evidence is indicative of sex discrimination. If it shows a "bias," it is in favor of employees who are aggressive negotiators. Plaintiffs cite no evidence that Ladik made a similar demand to the same decision maker, but was turned down.

Alternatively, plaintiffs say that "[d]efendant has not established that the failure to transfer Ms. Ladik [instead of Deskins to the Baraboo store] was not discriminatory." Plts.' Br., dkt. #114, at 27. As an initial matter, it is plaintiffs' burden to prove discrimination, not defendant's burden to disprove it, Bass, 746 F.3d at 841, so this argument fails at the starting gate. In any event, plaintiffs concede that Ladik did not apply for the Baraboo

5

position.  Plaintiffs cite Loyd v. Phillips Brothers, Inc., 25 F.3d 518, 523 (7th Cir. 1994), for the proposition that, "[w]hen there is no formal application process for a position, as was the case here, a plaintiff need only show that had the employer approached her, she would have accepted the offered position." Plts.' Br., dkt. #114, at 27-28.  However, plaintiffs' reliance on Loyd is misplaced for two reasons.  First, Loyd, 25 F.3d at 523, applies when "an employer does not solicit and await applications but hands out promotions on its own initiative in a nonselective, serial fashion."  In this case, plaintiffs cite no evidence that defendant approached Deskins for a promotion without requiring him to apply for it. Rather, it is undisputed that Deskins applied for the job in response to an advertisement in the Portage newspaper, Plts.' PFOF ¶ 109, dkt. #122, so Loyd does not apply.  Even if it did and I assumed that Ladik would have accepted the Baraboo position if defendant offered it to her, plaintiffs still would have to prove that defendant failed to offer Ladik the job because of her sex rather than for another reason.  Hobbs v. City of Chicago, 573 F.3d 454, 461 (7th Cir. 2009).  Because plaintiffs do not even attempt to make this showing, defendant is entitled to summary judgment on this claim.

Plaintiffs raise two other claims in their brief related to alleged sex discrimination against Ladik: (1) Deskins received larger raises than Ladik; and (2) newly hired males made "only slightly less" than Ladik, even though she had worked for defendant much longer.  The problem with both of these claims is that plaintiffs point to what they perceive as disparities without exploring any of the surrounding circumstances.  With respect to the larger raises, plaintiffs assume that Ladik's and Deskins' pay should have been the same because they held

similar positions, without considering other factors related to performance or the decision makers involved. With respect to the newly hired males, seniority is the only factor plaintiffs address. They make no showing that the difference between Ladik's pay and the newly hired males should be more in light of her seniority and they do not address the merits of any particular decision regarding pay. Without such evidence, no reasonable jury could find that defendant discriminated against Ladik by failing to pay her more.

2. Marie Coggins

Plaintiff Coggins worked for defendant from 1988 to 1991, from 1998 until 2001 and from 2007 to 2010. In plaintiffs' complaint, Coggins asserted discrimination claims regarding both pay and promotions, but in her summary judgment brief, the only argument plaintiffs develop related to disparate treatment against Coggins is that defendant should have promoted her to a "support manager" position in October 2010 at a store in Janesville, Wisconsin. In their responses to defendant's proposed findings of fact, plaintiffs say that they "dispute[] [that Coggins] was not subjected to additional promotion discrimination while at Wal-Mart." Plts.' Resp. to Dft.'s PFOF ¶ C12, dkt. #120. However, plaintiffs do not discuss any other allegedly discriminatory promotion decisions in their brief. Further, plaintiffs' only discussion related to unequal pay with respect to Coggins is a lengthy footnote in which plaintiffs argue that Coggins "did not concede in her deposition that her pay claim is limited to the period from 1998 to 2001." Plts.' Br., dkt. #114, at 20. However, plaintiffs do not develop an argument that a reasonable jury could find that

defendant paid Coggins less at any time because of her sex. Accordingly, plaintiffs have forfeited all claims related to Coggins except for the October 2010 promotion decision.

With respect to that failure to promote claim, defendant lists several reasons why it gave the promotion to a male (Leslie Soulier) instead of plaintiff: (1) Soulier had been a department manager for the preceding 21 months but plaintiff had been a department manager for the preceding 11 months; (2) Soulier had more "back-end" management experience, which was more relevant to the position than plaintiff's "front-end" management experience; (3) Soulier interviewed well; (4) Soulier received a strong recommendation from his store manager at the time; and (5) selecting Soulier allowed him to transfer stores in compliance with a company policy that prohibited personal relationships between certain employees.

Some of these reasons may not be legitimate justifications for the different treatment. For example, whether Soulier interviewed well is irrelevant because defendant did not give Coggins an opportunity to interview for the position. If Coggins did not have a chance to give an interview, then Soulier's interview performance could not be a reason to prefer Soulier over Coggins. (Plaintiffs do not raise a separate claim that defendant violated Title VII by failing to interview Coggins, so I do not consider that question.) Similarly, defendant does not suggest that Coggins's store manager had an opportunity to provide a recommendation for her. Finally, with respect to Soulier's 21 months of recent management experience, defendant does not cite any evidence that the decision maker, Tyler Ketterhagen, considered this issue in making his decision. However, excluding these asserted reasons is

not dispositive because the general rule is that a plaintiff must show that all of the employer's reasons are pretextual, Senske v. Sybase, Inc., 588 F.3d 501, 507 (7th Cir. 2009), and plaintiff does not identify any reason why that rule should not apply in this case.

With respect to defendant's reason that Soulier had more relevant experience, Ketterhagen (the hiring manager) testified that the support manager position was an "overnight position," so only a small percentage of the responsibilities were "front-end," such as customer service and supervising cashiers. Ketterhagen Dec. ¶ 5, dkt. #77. Rather, most of the responsibilities were "back-end," such as managing inventory and restocking. Id.

Plaintiffs do not deny that Soulier had more "back-end" experience than Coggins did, but they say that does not matter because the job description for a support manager position does not make a "front-end" and "back-end" distinction. However, plaintiffs cite no authority for the view that it is evidence of pretext any time an employer considers issues not discussed in the job description. It is undisputed that the position involved overnight shifts (when the store would be less busy), so it makes sense that defendant would have a preference for someone who had experience in managing inventory rather than customer service. Hobbs, 573 F.3d at 461 (affirming grant of summary judgment in employment discrimination in case involving failure to promote plaintiff to foreman position; although plaintiff had more supervisory experience, she did not have experience that employer viewed as important for job). Although plaintiffs say that Coggins could have been trained on the back-end responsibilities, it is not surprising that defendant would choose someone who already had the experience it thought was most important.

Neither side provides many details about defendant's fraternization policy, but my understanding is that defendant prohibited employees in a romantic relationship from working at the same store under some circumstances and that Soulier's transfer to the Janesville store avoided a violation of that policy. Plaintiffs say that defendant's policy did not require it to give the promotion to Soulier, but defendant has not argued that. Although accommodating a romantic relationship may not be the best reason for awarding a promotion, it is not prohibited by Title VII. Plaintiffs have not adduced any evidence that defendant applied its policy in a discriminatory fashion. In any event, even if this reason is disregarded, it does not undermine defendant's preference for giving the promotion to someone with back-end experience.

Finally, plaintiffs say that defendant's decision to promote Soulier over Coggins is suspicious because she had more overall management experience from many years earlier and because Soulier had had "three coachings" in the past. (The parties do not explain what "coachings" are, but from the context of the parties' discussion, I assume that a coaching is a type of disciplinary action.) Plaintiffs say little about the nature of Coggins's previous management experience and they provide no context for Soulier's previous coachings. Regardless, plaintiffs' arguments are a nonstarter because plaintiffs do not dispute that Ketterhagen was not aware of Coggins's earlier management experience or of Soulier's past "coaching." As plaintiffs suggest, Ketterhagen's failure to review personnel files more carefully may be evidence that defendant "had [Soulier] in mind before [it] even started opening up" the support manager position. Plts.' Br., dkt. #114, at 17. However, even if

that is the case, plaintiffs do not cite any evidence to show that defendant picked Soulier because of his sex rather than because of what it viewed as his relevant experience. After all, plaintiffs acknowledge that the previous support manager position (in September 2010) at the Janesville store went to a female. Plts.' Resp. to Dft.'s PFOF ¶ 68, dkt. #120. Although plaintiffs are correct that every employment decision must be evaluated separately, in the absence of any other evidence of bias, it would not be reasonable to infer that defendant declined to promote Coggins in October 2010 because of her sex.

3. <u>Sondra Steeb-Lamb</u>

Steeb-Lamb worked for defendant from 2001 to 2008 at the Baraboo, Wisconsin store. She asserts claims for discrimination in pay and promotions.

With respect to Steeb-Lamb's pay discrimination claim, plaintiffs say that Steeb-Lamb and her husband began working for defendant at the same time in similar positions (she was the lead associate in the deli; he was a baker), but he was paid $14.00 an hour and she was paid $13.00 an hour. Defendant says that Steeb-Lamb and her husband were not similarly situated because the responsibilities of a baker are different from the responsibilities of a deli associate. In response, plaintiffs say that defendant's job descriptions for a baker and deli associate list similar qualifications for both positions. That is true, but it is also true that the baker's job description includes a number of tasks and skills unique to baking. <u>E.g.</u>, dkt. #115-18 at 4 ("primary responsibilities" for baker include "understand[ing] scaling weights, friction factor, fermentation times, filtering process, batter weights, mixing and

finishing techniques"). Because plaintiff does not point to any tasks of a deli associate that would require a comparable level of skill, she has not raised a genuine issue of material fact with respect to the question whether she was similarly situated to her husband for the purpose of determining an appropriate pay rate.

Alternatively, plaintiffs cite Steeb-Lamb's deposition testimony that "it was clearly indicated to me [during her interview] that [Steeb-Lamb's husband] was going to make more because he was the head of the household." Steeb-Lamb Depo. at 86, dkt. #88. However, Steeb-Lamb later clarified her position, stating that "no one actually said [Steeb-Lamb's husband] is going to make more because he's the head of the household." Id. at 87. When counsel asked Steeb-Lamb to explain how it was "indicated" to her that her husband was making more than her because he was the head of the household, she testified, "It was just very clear. It was very clear. What? Look, body language, maybe a 'huh,' maybe—I don't remember specifically." Id. at 88. When asked to further explain the foundation for her belief, she stated, "I cannot specifically say whether there were words or not at this time. All I know is that I clearly understood that this—[my husband is] the head of household and I am not." Id. at 88.

Despite additional questions from counsel on this issue, Steeb-Lamb did not provide specific facts supporting her belief regarding the reasons for the difference in pay. It is well established that a party's subjective belief is not evidence of discriminatory intent. Yancick v. Hanna Steel Corp., 653 F.3d 532, 547-48 (7th Cir. 2011); Sanderson v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999). No matter how strongly a party holds that belief, she must

support it with objective evidence that can be evaluated by the factfinder. Because plaintiffs do not identify any specific speech or conduct by defendant that led Steeb-Lamb to believe that defendant was discriminating against her, defendant is entitled to summary judgment on this claim.

With respect to Steeb-Lamb's promotion claim, plaintiffs say that several male employees were promoted to management trainee positions after Steeb-Lamb expressed interest in management, Plts.' PFOF ¶ 157, dkt. #122, but plaintiffs develop no argument and cite no evidence that the male employees were similarly situated to her, so she cannot prevail on that claim. Plaintiffs also say that, after Steeb-Lamb was promoted to management, she "was discouraged from applying for future promotions" because she received an undesirable assignment in the bakery and was subjected to "unfair job coachings." Plts.' Br., dkt. #114, at 39. Defendant objects to these arguments on the ground that they are outside the scope of the lawsuit, but even if I set that objection aside, these claims fail because plaintiffs do not develop an argument in their brief that Steeb-Lamb's assignment or her job coachings were discriminatory. In fact, other than Steeb-Lamb's conclusory opinion that the coachings were "bogus," Plts.' Br., dkt. #114, at 34, plaintiffs cite no evidence to suggest that any discipline Steeb-Lamb received was not well-founded.

In their proposed findings of fact, plaintiffs say that the same supervisor who gave Steeb-Lamb unfair coachings also gave another female employee "bogus" coachings and had "pressured two other female Assistant Manager[s] to step down to Associate positions."

Plts.' PFOF ¶¶ 165 and 167, dkt. #122.  Again, however, plaintiffs do not provide any foundation for the belief that the coachings were "bogus."  With respect to the alleged "pressure" on other assistant managers, the testimony plaintiffs cite does not identify any particular acts by the supervisor to encourage employees to step down.  Rather, Steeb-Lamb testified that "one or two other assistants had left under [that supervisor] prior to me," but she did not provide any context for those decisions, so it is impossible to reasonably infer discriminatory intent from those events.  Accordingly, I am granting summary judgment to defendant on this claim as well.

4.  Jackie Goebel

Goebel has been working at defendant's store in Kenosha, Wisconsin since 1988. Plaintiffs point to three male employees (Bryan Fournier, Dave Prado and Michael Kozel) at the store who received larger and more frequent merit increases than Goebel did between 1990 and 2004.  Plaintiffs also say that Don Schweitzer and Alfred Ruffalo received better raises.  However, as has been the problem with so many of the claims in this case, plaintiffs fail to provide any context for any decisions regarding raises.

For example, plaintiffs do not identify whether the other employees had the same supervisors as Goebel or whether the positions the other employees held were similar to Goebel's.  In fact, plaintiffs do not adduce evidence about the circumstances of any particular decision to grant or deny a raise.  The closest plaintiffs come is to say that Goebel consistently had positive evaluations while Kozel received coachings and had even been

terminated once before being rehired. However, plaintiffs are silent as to the dates of any disciplinary treatment against Kozel, except they say that he was terminated in 2012. Plts.' PFOF ¶ 188, dkt. #135. Because plaintiffs cite no evidence regarding Goebel's and Kozel's relative pay during that time, these disciplinary actions are not probative of discrimination. Even if I assume that Kozel was receiving raises at the same time that he was being disciplined, it would not be reasonable to infer discriminatory intent without additional evidence regarding the other circumstances surrounding those decisions.

Plaintiffs cite Simpson v. Office of the Chief Judge, 559 F.3d 706, 719 (7th Cir. 2009), and McNabola v. Chicago Transit Authority, 10 F.3d 501, 514 (7th Cir. 1993), for the proposition that, "when there are unique circumstances, courts may relax the similarly-situated analysis and draw more broadly for comparator employees for this element of the prima facie case." These cases do not help plaintiffs because, even if I assume that Goebel had a "unique" position, plaintiffs fail to cite evidence that Goebel was similarly situated in any respect to male employees who received larger or more frequent raises than she did. In both Simpson and McNabola, the court made the point that, in a similarly situated analysis, the focus should not be on a job title, but on whether the employees were similar in ways relevant to the particular decision at issue. In neither case did the court suggest that a plaintiff is relieved of her burden to prove discriminatory intent when she has a unique job. Rather, in Simpson, 559 F.3d at 718, the court rejected the view that "an employee holding a position that has no comparison in an organization is excused from pointing to a similarly situated employee."

In a footnote, plaintiffs say that they "requested the personnel files of Don Schweitzer and additional performance documents for Mr. Kozel but they have not been produced to date." Plts.' Br., dkt. #114, at 41. To the extent plaintiffs mean to blame defendant for their lack of evidence, they have forfeited the issue by failing to file a motion to compel or a motion under Fed. R. Civ. P. 56(d) for more time to respond to defendant's summary judgment motion. I am granting defendant's motion for summary judgment as to plaintiff Goebel's disparate treatment claims.

### B. Disparate Impact

Each of the plaintiffs asserts a disparate impact claim. Under 42 U.S.C. § 2000e-2(k), an employer violates Title VII if "a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." To satisfy her initial burden, a plaintiff must show that a "specific employment practice" has caused "statistical disparities" in the treatment of employees in different protected classes. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988). In addition, she must show that she has standing to challenge the employment practice at issue with evidence that the practice injured her in particular. Farrell v. Butler University, 421 F.3d 609, 617 (7th Cir. 2005).

In their original summary judgment brief, plaintiffs did not develop arguments about

their disparate impact claims, but instead stated in several footnotes that data they needed to prove their disparate impact claims was subject to a protective order in a different case in California and they were waiting for a decision from the presiding judge on whether they could modify the order so that they could use the data in this case. They asked this court to supplement their summary judgment materials if and when they obtained that data.

In an order dated July 25, 2014, dkt. #114, I noted that plaintiffs had not explained why they failed to request the data earlier or how the data would help prove their disparate impact claims. In addition, plaintiffs had failed to notify this court that the California court had granted their motion a few days after they filed their summary judgment brief in this case. Nevertheless, I gave plaintiffs an opportunity to supplement their summary judgment briefs and proposed findings of fact to incorporate the data.

In their supplemental brief, plaintiffs argue that the data shows that defendant discriminated against women at plaintiffs' stores in the context of pay. They prepared charts showing that (1) women employees' average hourly rate was lower than the men's rate at one store and only "slightly" higher at three stores, even though the women on average had worked for defendant for much longer than the men and received higher performance ratings; and (2) at three of the stores, the percentage of the average annual wage increase was higher for men than it was for women.

Defendant challenges plaintiffs' statistical data as unreliable and it argues that plaintiffs cannot prove discrimination with evidence that women received higher pay than men. However, even if I reject both of these arguments, plaintiffs' supplemental brief has

17

an obvious and fatal problem, which is that plaintiffs make no effort to connect the wages that plaintiffs in particular or female employees in general received to any specific employment practice. Plaintiffs refer generally to several policies that they say are discriminatory, but they fail to show any causal connection between those policies and women's level of pay. Accordingly, defendant is entitled to summary judgment on plaintiffs' disparate impact claims.

## ORDER

IT IS ORDERED that

1. Defendant Wal-Mart Stores, Inc.'s motion for summary judgment, dkt. #59, is GRANTED.

2. The motion filed by plaintiffs Sandra Ladik, Jackie Goebel, Marie Coggins and Sondra Steeb-Lamb to strike portions of Michael Evert's affidavit and defendant's supplemental proposed findings of fact, dkt. #167, is DENIED as moot.

3. Defendant's motion to sever the case or hold separate trials, dkt. #125, is DENIED as moot.

4. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 21st day of August, 2014.

                                          BY THE COURT:
                                          /s/
                                          BARBARA B. CRABB
                                          District Judge